THOMAS BELLAMY *v.* STATE OF INDIANA.

[No. 1071S305. Filed August 25, 1972. Rehearing denied October 3, 1972.]

*David. F. McNamar, Steers, Klee, Sullivan & Lemay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by two separate affidavits, one for dispensing of heroin in violation of the 1935

Narcotics Act and the other for possession of heroin in violation of said Act. The cases were consolidated for trial before the court without a jury. There was a finding of guilty as charged in both cases. Appellant was sentenced to the Indiana State Prison for not less than five years nor more than 20 years on the charge of dispensing and for not less than two years nor more than 10 years on the charge of possession.

The record reveals the following:

At approximately 5:00 P.M. on May 12, 1971, appellant and Robert Swanigan were observed by Indianapolis Detective Sgt. Mukes in a 1965 gray Cadillac which Sgt. Mukes had been seeking. Sgt. Mukes was accompanied by Officers Crawford and Coombs. When they observed appellant in the Cadillac, they entered the alley where he was parked. Headed in the opposite direction, they stopped beside the car. Both Officers Crawford and Coombs displayed their identification to the appellant; however, the appellant backed his car out of the alley, closely followed by Sgt. Mukes, who was blowing his horn and motioning for the appellant to stop. Appellant backed his car from the alley into Camp Street and drove off at a high rate of speed. Sgt. Mukes followed in pursuit. When appellant got to Ninth Street and Camp, he stopped and Mr. Swanigan got out. As Swanigan was getting out of the car, Sgt. Mukes observed appellant hand Swanigan a brown envelope. The appellant drove off. Sgt. Mukes stopped and both Officer Crawford and Officer Coombs got out of the car to apprehend Swanigan. Sgt. Mukes continued in his pursuit of the appellant, who failed to stop for several preferential streets. At that time Sgt. Mukes radioed for assistance. Appellant was finally stopped by two patrol cars answering Sgt. Mukes' call for assistance. Meanwhile Officers Crawford and Coombs pursued Swanigan on foot and observed him throw the brown envelope, which he had received from the appellant, to the ground.

Officer Crawford recovered the envelope, and the officers performed two separate field tests on the contents of the envelope, each of which disclosed the contents to be heroin.

After these tests were made, the envelope and its contents were taken to the police property room, where it was placed in a lock box. It was later removed from the lock box and placed in the narcotic vault, after which it was taken to the laboratory and again tested, the test revealing the contents to be heroin.

Appellant first argues the trial court erred in admitting the envelope and its contents into evidence, challenging the sufficiency of the chain of custody. There does appear to be some confusion in the testimony of the officers as to the exact chain of possession from the time the envelope and its contents entered the property room until they arrived at the court room. However, we point out that if there was error in the failure to maintain a chain of possession, this error was harmless in that the officers did perform tests on the contents of the envelope at the scene at the time of the arrest of the appellant. Both of these tests revealed the contents to be heroin. This alone was sufficient evidence to support the court's finding that the appellant was in possession of and was dispensing heroin. There was no objection by the appellant to the testimony of the officers concerning the field tests. The police laboratory test which was later performed which might possibly have been affected by a break in the chain of possession was merely cumulative evidence that the content of the envelope was heroin. See *Rector* v. *State* (1971), 256 Ind. 634, 271 N. E. 2d 452, 26 Ind. Dec. 335.

Appellant next argues that the evidence is insufficient in that it is based solely upon evidence which is contrary to the laws of nature. It is his contention that the police officers' testimony is unreliable because at the time they claimed to have seen the appellant hand the brown envelope to Swanigan they were at a distance of at least 25

feet and could not possibly have seen inside appellant's automobile. We do not agree with the appellant that such an observation is so impossible as to be inadmissible. At the point in time of the observation, the officers' interest in the appellant was by no means casual. The trier of fact was justified in believing from the evidence of the case that the officers were keenly intent on observing the conduct of the appellant and Swanigan. We certainly cannot say that it was impossible for the officers to have seen the transfer of the envelope from appellant to Swanigan. It was their testimony that they did see it. This Court will not weigh such testimony nor will we determine the credibility of the police officers who testified in the presence of the trial court. *Coleman* v. *State* (1971), 257 Ind. 439, 275 N. E. 2d 786, 28 Ind. Dec. 37.

Appellant also contends there was no evidence of probative value establishing that he was in possession or control of the package of heroin. With this we disagree. Although Swanigan testified at the trial that he was the one who possessed the heroin and appellant did not give it to him, it was within the province of the trial court to weigh Swanigan's testimony with that of the police officers and make a determination thereon. *Black* v. *State* (1971), 256 Ind. 487, 269 N. E. 2d 870, 25 Ind. Dec. 637.

The trial court is affirmed.

Arterburn, C.J., and Prentice, J., concur; Hunter, J., concurs in result; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—I dissent in this case because I do not believe that there was evidence from which the trier of fact could reasonably infer beyond a reasonable doubt that the appellant possessed and dispensed the narcotic in this case. Even assuming that the officer's testimony concerning what he saw was not incredible as a matter of law, there is a complete lack of evidence as to who possessed or had the narcotic under

control prior to the time that the appellant handed the envelope to the passenger. The officers testified that they saw the envelope pass from one hand to the other and nothing else. It is not an uncommon gesture for one remaining in a car to hand a passenger an article as he leaves, an article which has perhaps been inadvertently left on the seat. This gesture is surely not enough to support a conviction of sale or dispensing of narcotic drugs.

To illuminate this problem, suppose that an officer turns a corner and sees A handing an envelope to B a short distance away, and suppose that the envelope contains a narcotic. Suppose further that A is charged with the giving or selling of narcotics and the sole evidence at the trial is what the officer saw coupled with B's testimony that he had just dropped the envelope and A had picked it up and was just handing it to him when the officer rounded the corner. Is this evidence sufficient to convict A of the crime charged? I think not. The presumption of innocence and the heavy burden of proof that the State is put to in a criminal case is, in my opinion, aimed at preventing such a result. We can guess and hypothesize about just what happened in the above scenario and speculate on whether or not we think B is telling the truth, but we cannot convict and sentence a man to up to twenty years in prison on the basis of what we think might really have happened. Just as a police officer needs articulable facts concerning his feelings that he has probable cause to arrest a suspect, *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, so do we demand objective evidence of the charged crime. In our hypothetical above, as in the actual cases before us, there are no such articulable facts to support the inferences needed to support the conviction.

We do not here question the good faith of the officer, or question his knowledge of the situation which might lead him to be certain what in fact was taking place. Informal hearsay and a well-developed "street sense" are important tools in law enforcement, but they cannot take the place of

objective evidence at the time of trial. As we have often pointed out a verdict based "upon suspicion, opportunity, probability, conjecture, or unreasonable inferences of guilt gleaned from vague evidence" cannot stand. *Durham* v. *State* (1968), 250 Ind. 555, 238 N. E. 2d 9, 13; *Manlove* v. *State* (1968), 250 Ind. 70, 232 N. E. 2d 874.

If we make the assumption that evidence of the appellant's flight is an indicia of guilt, the question in this case becomes, whose guilt? In *Alberty* v. *U.S.* (1895), 162 U.S. 499, 511, 16 S. Ct. 864, 868, 40 L. Ed. 1051, the Supreme Court stated that:

"it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." (Quoted with approval in *Wong Sun* v. *U.S.* (1963), 371 U.S. 471, 83 S. Ct. 407, 415, 9 L. Ed. 2d 441, fn. 10)

If the narcotics belonged to the passenger, the flight means nothing as to this appellant. In short, we can solve the mystery of whose narcotics were found, as well as the mystery of who felt guilty and why, only if we can ascertain who brought the narcotics into the car and who possessed them. Lacking that knowledge, or any evidence from which we could infer that knowledge, we cannot say, nor could a trier of fact say, that the appellant was guilty of possessing or dispensing narcotics beyond a reasonable doubt.

The sole evidence on this point is that the officers saw the envelope in the appellant's hand for a split second as he handed the envelope to the passenger. In my opinion this is not sufficient to support the inference that the appellant was the one who had brought the narcotic into the car or who controlled its disposition.

NOTE.—Reported in 286 N. E. 2d 401.