NOTE.—Reported 346 N.E.2d 266.

## KAREN SMITH *v.* STATE OF INDIANA

[No. 1-875A144.  Filed April 29, 1979.  Rehearing denied June 7, 1979.
Transfer denied September 8, 1976.]

*E. Edward Dunsmore,* of New Castle, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant Karen Smith was convicted by a jury on two separate counts of delivery of

marijuana and possession of marijuana, in violation of Pub. L. No. 335, § 1 [4-1(a) and-1(c)], [1973] Ind. Acts 1834, *as amended,* Pub. L. No. 152, § 10, [1974] Ind. Acts 642 (repealed 1975), formerly codified at IC 1971, 35-24.1-4-1, Ind. Ann. Stat. § 10-3561 (Burns 1956).

## FACTS:

Witnesses Benny Spencer and Terry Ramage were working as undercover agents for the New Castle Police Department. They had come to suspect defendant's husband as a supplier of marijuana, and came to his house on October 14, 1974, in an attempt to make a buy. The defendant answered the door and told the two undercover agents that her husband was not at home, so the two agents left. They returned a short time later, and told defendant that they just wanted to buy some marijuana.

Spencer testfied that defendant left the door, but returned a short time later with one packet of marijuana. Spencer gave her a twenty dollar bill and left. Ramage testified that he witnessed the exchange that took place, although he could not see exactly what was exchanged.

When the agents returned to their car, Spencer showed Ramage the packet, and eventually placed the packet in an evidence envelope marked with the appropriate information. Spencer testified that he placed the envelope in a small lockbox in his motel room, where it remained until he turned it over to James Covey of the New Castle Police Department. Covey testified that he placed it in the evidence safe in Police Chief Thomas E. Burke's office under Chief Burke's direction, and then removed the envelope, again under Chief Burke's direction, and gave it to Captain Don Beck. Beck testified that he and Covey conducted a field test of the substance, which showed it to be marijuana. Police Chief Burke testified that the envelope was not tampered with while under his control.

ISSUES:

There are five separate issues raised for our review:

1) Was a chain of custody established so as to provide sufficient evidence to uphold the jury's verdict?

2) Did the trial court judge abuse his discretion in failing to order a mistrial after the court's order for separation of witnesses had been twice violated?

3) Did the trial court's action in allegedly helping the prosecution establish a proper chain of custody prejudice the jury against the defendant?

4) Did the State's action in displaying to the jury State's Exhibit One, the seized packet of marijuana, amount to an evidential harpoon since the exhibit was never admitted into evidence?

5) Was the defendant properly sentenced under both counts of the indictment?

Our resolution of these five issues forcloses the need to discuss other errors raised by the defendant.

## I.

Defendant first alleges that there was a complete break in the chain of custody of the marijuana, both before the field test and during the subsequent laboratory test at the Indiana State Police Laboratory. Inasmuch as the trial court eventually excluded State's Exhibit No. 1 because of the break in the chain of custody, defendant contends that there is a failure of proof to connect her with any controlled substance, and that she is entitled to a reversal under the holding of *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652.

In *Graham,* our Supreme Court held that unless the State can show the continuous whereabouts of the exhibit, at least between the time it came into the State's possession until it was laboratory tested to determine its composition, testimony of the State as to the laboratory's findings is inadmissible. However, it is clear from *Graham* and subsequent cases, see *Slettvet* v. *State* (1972), 258 Ind. 312, 280 N.E.2d 806, that the drugs themselves need not be put into evidence if there is actual proof of the nature of the sub-

stance that was shown to be in defendant's possession. This proof can be supplied either by testimony as to the chemical analysis of a substance that can be properly traced to the defendant, *Graham* v. *State, supra,* or if there is no expert testimony based on a chemical analysis, testimony by someone sufficiently experienced with the drug who is able to say that the substance in defendant's possession was indeed a controlled substance, *Slettvet* v. *State, supra.*

In *Mayes* v. *State* (1974), 162 Ind.App. 186, 318 N.E.2d 811, we stated the rule as follows:

> "Our analysis of case authority leads us to conclude that while any substantial break in the chain of custody to the time of trial might require exclusion of the exhibit offered, not all relevant testimony concerning that article or substance need be excluded. Where as here, the chain is unbroken from the time of its seizure to the time the substance in question has been tested *with conclusive results,* testimony to that effect may be received." 162 Ind.App. at 200, 318 N.E.2d at 819. (Our emphasis.)

In the case at bar, we believe the above recital of the facts makes it clear that the chain of custody was established up to the time of the field test by Officer Beck. It was not necessary for Beck to know the origin of the substance he was testing, as long as other witnesses established the fact that the substance tested came from this defendant. Here, the envelope was marked with defendant's number, and its chain of custody was accounted for at all times up until the field test. Thus, if the field test can meet the test of conclusiveness that *Mayes, supra,* requires, we will be able to say that there was no error in allowing the jury to hear testimony as to the findings of that field test.

As to the "conclusiveness" of the field test, our Supreme Court, in *Bellamy* v. *State* (1972), 259 Ind. 254, 286 N.E.2d 401, stated:

> "* * * There does appear to be some confusion in the testimony of the officers as to the exact chain of possession from the time the envelope and its contents entered the property

room until they arrived at the court room. However, we point out that if there was error in the failure to maintain a chain of possession, this error was harmless in that the officers did perform tests on the contents of the envelope at the scene at the time of the arrest of the appellant. Both of these tests revealed the contents to be heroin. *This alone was sufficient evidence* to support the court's finding that the appellant was in possession of and was dispensing heroin. There was no objection by the appellant to the testimony of the officers concerning the field tests." 259 Ind. at 256, 286 N.E.2d at 403. (Our emphasis.)

Thus, *Bellamy* stands for the proposition that a field test alone may be sufficient to establish the presence of a controlled substance. We note that while defendant did object to the testimony of Officer Beck, the grounds for his objection was failure to estabilsh a proper chain of custody; there was no attack on the integrity of the field test performed. Questions about the field test would properly go to the weight of the evidence. If the jury is convinced that the field test was accurate, then this court will not weight that evidence nor disturb their verdict. We believe that the "conclusive results" required by *Mayes* v. *State, supra,* refers to the test results that must be found conclusive in the eyes of the jury as they weigh the questions of fact in order to determine whether a defendant is guilty beyond a reasonable doubt.

We hold that a proper chain of custody was established here up to the time of the field test, and that the results of that test provide sufficient evidence to allow the jury to find the defendant guilty beyond a reasonable doubt.

## II.

The defendant contends that the trial court abused its discretion in failing to order a mistrial after it became evident that the court's previous separation of witnesses order had been twice violated. She also contends that the trial court committed error in not allowing the jury to hear evidence of this violation, inasmuch as two Indiana cases have clearly held that a violation of such an order goes to the credibility

of the witness, and the jury should be allowed to hear such evidence in order to evaluate the witness' believability at trial. See *Davis* v. *Byrd* (1883), 94 Ind. 525; *Burk* v. *Andis* (1884), 98 Ind. 59.

An examination of the record discloses no grounds for mistrial in the opinion of this court. The first witness testified that although he had violated the order by talking to ██ another witness, nothing concerning either's trial testimony was discussed in the meeting, and the discussion was simply a friendly encounter between co-workers. Likewise, a second witness stated that his unauthorized meeting was limited to a discussion between the prosecutor and himself about a state lab report, and that although another witness was present, no information passed between the two parties.

In *Merrill* v. *State* (1973), 158 Ind. App. 528, 303 N.E.2d 663, this court stated:

"A violation of an order separating witnesses does not automatically entitle a defendant to a mistrial. *Hightower* v. *State* (1973), [260] Ind. [481], 296 N.E.2d 654. Nor are innocuous encounters cause for reversal. *Wright* v. *State* (1972), [259] Ind. [197], 285 N.E.2d 650. Permitting a witness to testify after a violation of such an order is within the sound discretion of the trial court. *Grimes* v. *State* (1972), [258] Ind. [257], 280 N.E.2d 575; *Myslinski* v. *State* (1971), [257] Ind. [558], 275 N.E.2d 544. The appropriate rule, dispositive of this issue, is contained in *McCoy* v. *State* (1960), 241 Ind. 104, 170 N.E.2d 43, where Chief Justice Arterburn held:

'In the absence of any procurement or connivancy by the party using such a witness who has violated the order of the court, it is well established that it is within the discretion of the court to permit such a witness to testify. *Butler* v. *State*, 1951, 229 Ind. 241, 97 N.E.2d 492; *Kelley* v. *State*, 1948, 226 Ind. 148, 78 N.E.2d 547; *Romary* v. *State*, 1945, 223 Ind. 667, 64 N.E.2d 22.

'It has even been held to be prejudicial error to refuse to permit such a witness to testify where the party calling such witness is not at fault for such violation. *Taylor* v. *The State*, 1891, 130 Ind. 66, 29 N.E. 415; *The State ex rel. Steigerwald* v. *Thomas*, 1887, 111 Ind. 515, 13 N.E. 35.' 241 Ind., at 119, 170 N.E.2d at 50.

"See also: *Marine et al.* v. *State* (1973), [158] Ind. App. [72], 301 N.E.2d 778." 158 Ind. App. at 528, 303 N.E.2d at 665.

We find that if any prejudice resulted to the defendant, it was not sufficient to warrant a new trial.

We do agree with defendant that the fact that a witness violated a separation order should go to the jury as reflecting on the credibility of the witness. *Davis* v. *Byrd, supra; Burk* v. *Andis, supra.* Here, the first witness admitted his mistake before the jury, and thus there was no error in regards to him. However, the trial court erroneously prevented the jury from learning about the second witness' violation.

Although the trial court committed error, we hold that the error in this case was harmless. This second witness was brought in only to testify as to the chain of custody in regards to State's Exhibit No. 1. The trial court eventually ruled that such exhibit could not be admitted, and instructed the jury to disregard all of the testimony in regards to it. Thus, the credibility of the second witness was not an issue to be decided by the jury, and there could be no prejudicial error in withholding evidence pertaining thereto.

### III.

The defendant next contends that the trial court's actions in allegedly helping the prosecution establish a proper chain of custody prejudiced the jury against the defendant and so prevented a fair trial. The rule has been set forth in *Dixon* v. *State* (1972), 154 Ind. App. 603, 290 N.E.2d 731, 740, as follows:

"The rationale . . . is that a trial judge must necessarily have considerable latitude in the conduct of the proceedings in order to maintain discipline and control of the trial. The other side of the coin is, however, that reversible error may be committed if the trial judge abuses his descretion by intrusion of self into the proceedings in such a manner that presentation of the defendant's case is jeopardized. It

becomes a due process question—a matter of providing a defendant with a complete and unobstructed opportunity to be heard."

We find no improper conduct by the trial judge in this case, and indeed believe he showed commendable caution in conducting a fair and impartial trial. Rather than helping the State establish its chain of custody, the judge asked for clarification of testimony that in effect created new gaps in the chain. Further, he eventually excluded the questionable exhibit because of lack of chain of custody. The judge was trying to maintain control of the trial and prevent the admission of improper evidence, and we can find no prejudice in his doing so.

## IV.

Closely connected to the previous error is defendant's contention that she was the victim of an "evidential harpoon," inasmuch as the jury was able to see the prosecutor handle State's Exhibit No. 1, even though the exhibit was eventually denied admission because of a break in the chain of custody. She relies on *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312.

In *Brune* v. *State* (1976), 168 Ind. App. 202, 342 N.E.2d 637, we set out once again the thirteen factors that the *White* court considered in determining whether a mistrial should be granted because of an evidential harpoon. Assuming, without deciding, that a physical exhibit could amount to an evidential harpoon, under the theory of *White* v. *State,* we still do not believe that the trial court abused its discretion in failing to grant a new trial. Wide discretion must necessarily be given to the State when it is attempting to establish a complicated chain of custody. If anything, the State's failure to establish the chain of custody of the exhibit emphasized the weak points in its case.

One of the thirteen tests to be considered set out by the *White* opinion concerns whether there was other evidence

tending to prove the same fact as the one that is improperly put before the jury. Here, there was independent testimony that the substance received was indeed a controlled substance. The substance itself tended to prove no independent fact other than what was testified to by the witnesses trying to establish a link to the defendant. If the color of the substance were in issue, then possibly the independent display to the jury would communicate some fact not in evidence, but that is not the case here.

Nor do we find any other compelling reason to find the necessity of declaring a mistrial. Defendant's argument that the prosecutor knew that he would not be able to establish the chain of custody is not convincing in light of the effort he made to get the evidence admitted. We can find no error in refusing to grant a mistrial.

## V.

Defendant was sentenced under both counts of the indictment, i.e., sale of marijuana and possession of marijuana. The facts are clear, however, that only one delivery took place, and thus the possession charge was only a lesser included offense of the sale charge. *Cf. Thompson* v. *State* (1972), 259 Ind. 587, 290 N.E.2d 724. Where a sentence is pronounced on both the greater charge, and on a lesser included offense of the greater charge, the lesser offense's sentence will be vacated. *Lindsey* v. *State* (1976), 264 Ind. 198, 341 N.E.2d 505; *Franks* v. *State* (1975), 262 Ind. 649, 323 N.E.2d 221; *Havener* v. *State* (1955), 234 Ind. 148, 125 N.E.2d 25; *Carter* v. *State* (1951), 229 Ind. 205, 96 N.E.2d 273; *Kokenes* v. *State* (1938), 213 Ind. 476, 13 N.E.2d 524; *Overton* v. *State* (1974), 161 Ind. App. 650, 317 N.E.2d 467.

## CONCLUSION:

The judgment of the trial court for "Delivering a Controlled Substance" is affirmed. The judgment of the trial court

for the lesser included offense of "Possession of a Controlled Substance" is reversed and the cause remanded to the trial court with instructions to the trial court to amend its judgment in conformity with this opinion.

Affirmed in part and reversed in part.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 345 N.E.2d 851.