# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jul 16 2012, 9:17 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KYLE L. DOOLIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1111-CR-545 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

### APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1106-CM-747

**July 16, 2012**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Kyle L. Doolin ("Doolin") was convicted of possession of marijuana[1] as a Class A misdemeanor. He appeals and raises the following restated issue: whether the trial court abused its discretion when it admitted into evidence the results of an in-court field test of a substance alleged to be marijuana.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 16, 2011, Deputy Brian Petree ("Deputy Petree") of the Hendricks County Sheriff's Department was on patrol on Interstate 70 in Hendricks County. He observed a car fail to properly signal before making a lane change. Deputy Petree initiated a traffic stop of the vehicle, which was being driven by Brandon Hersey, Doolin's cousin. Doolin was a front-seat passenger in the car. After issuing a warning citation for the infraction, Deputy Petree asked for and received permission to search the vehicle. During the search, Deputy Petree found inside the locked glove box a digital scale and a velvet drawstring bag that contained two baggies of green leafy plant material, which Deputy Petree believed in his experience to be marijuana based on the look and smell of it. Officer Brady McManama ("Officer McManama") of the Stilesville Police Department read *Miranda* rights to both Hersey and Doolin at the scene and then transported the men to jail, where Doolin approached Deputy Petree and stated that the marijuana was his and that he wanted to take responsibility for it. The State charged Doolin with dealing in marijuana, a Class A misdemeanor. On the day of trial, the State was granted permission to add two counts:

---

[1] *See* Ind. Code § 35-48-4-11(1).

2

possession of marijuana and possession of paraphernalia, both Class A misdemeanors.

At the bench trial, after establishing the chain of custody and storage of the alleged marijuana, the State sought to have Deputy Petree perform a field test in the courtroom on a sample of the plant substance. Over Doolin's objections, the trial court permitted Deputy Petree to conduct two field tests on the material. Deputy Petree testified that the second test indicated the presence of THC, the active ingredient in marijuana.

Following trial, Doolin was found guilty of possession of marijuana and was acquitted of the other two counts. The trial court sentenced him to three-hundred-sixty-five days at the Hendricks County Jail, with credit for time served, and the remainder was suspended to probation. Doolin filed a motion to correct error, which the trial court denied. Doolin now appeals.

## DISCUSSION AND DECISION

Doolin argues that the trial court abused its discretion by admitting the results from the in-court field test conducted by Deputy Petree. We review the trial court's decision to admit evidence based on a scientific process under an abuse of discretion standard. *West v. State*, 805 N.E.2d 909, 913 (Ind. Ct. App. 2004), *trans. denied*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the circumstances. *N.W. v. State*, 834 N.E.2d 159, 161 (Ind. Ct. App. 2005), *trans. denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Taylor v. State*, 904 N.E.2d 259, 261-62 (Ind. Ct. App. 2009), *trans. denied*.

To convict Doolin of possession of marijuana, the State was required to prove beyond

a reasonable doubt that he knowingly or intentionally possessed marijuana. Ind. Code § 35-48-4-11. In this case, the alleged marijuana seized from the vehicle was not tested prior to trial; rather, the only test conducted on the substance was the in-court field test conducted by Deputy Petree. Doolin asserts it was error to admit the results of that test because its reliability was not established.

Pursuant to Indiana Rule of Evidence 702(b) ("Rule 702"), expert scientific testimony is admissible only if reliability is demonstrated to the trial court. Rule 702 provides:

> (a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

The proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles. *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind. 1997). There is "no specific test" that must be considered in order to satisfy Rule 702(b). *West*, 805 N.E.2d at 913 (citing *McGrew*, 682 N.E.2d at 1292). Rather, reliability may be established by judicial notice or, in its absence, by sufficient foundation to convince the trial court that the relevant scientific principles are reliable. *Id.* In determining whether scientific evidence is reliable, the trial court must determine whether the evidence appears sufficiently valid, or, in other words, trustworthy, to assist the trier of fact. *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 n.9 (1993)).

In this appeal, Doolin does not challenge Deputy Petree's qualifications. Rather, he

4

argues that the State failed to present a sufficient foundation for the reliability of the field test in question. Based on our review of the record before us, we agree that it was error to admit the results of the in-court field test because its reliability was not established.

At trial, Doolin timely objected to the admission of the field test, asserting that a proper foundation had not been established. He argued that the courtroom was not a controlled environment, Deputy Petree was not a chemist, and that "there's a little higher burden than having an officer do a field kit test here – here in the courtroom." *Tr*. at 44-45. The trial court overruled the objection and permitted Deputy Petree to conduct the field test. Prior to starting the test, however, Deputy Petree explained the procedures he would follow: place a small sample of the plant material in a glass bottle, drop in a capsule, shake the bottle and break the capsule, and "[i]f it turns blue," then that indicates the presence of THC, the active ingredient in marijuana. *Id*. at 45. Deputy Petree also stated that the procedure was routinely used by the Hendricks County Sheriff's Department. Doolin again objected, noting that there were no seals, was no showing of the accuracy of the tests, and was no showing that the kit was in proper working order. The trial court overruled the objection and permitted Deputy Petree to conduct the field test. Before starting, Deputy Petree inquired whether there were any gloves available to him in the courtroom; there were not. He proceeded, but during Deputy Petree's first test, the ampoule did not break and was stuck, and no results were yielded. *Id*. at 48. The State then requested permission for Deputy Petree to conduct a second test, which was granted over Doolin's objection. Deputy Petree testified that the results were blue, indicating the presence of THC, the active ingredient in

5

marijuana; counsel for Doolin voiced his disagreement that the results were, in fact, blue or otherwise conclusive.

The State urges that under the precedent of *Burkett v. State*, 691 N.E.2d 1241 (Ind. Ct. App. 1998), *trans. denied*, we should find no error in the admission of Deputy Petree's field test. In *Burkett*, police stopped a speeding car, driven by Burkett. Burkett failed a field sobriety test and a portable breath test, and before he was transported to jail, the officer conducted a patdown search of Burkett for officer safety. The officer discovered a green, leafy substance in Burkett's pocket. At the jail, the officer conducted a field test on the substance, and the result was positive for marijuana. *Id*. at 1243. He was charged and convicted of possession of marijuana.

On appeal, Burkett claimed that the trial court erred in admitting the results of the field test because the State failed to provide sufficient foundation for both the testifying officer's qualifications and the reliability of the field test. *Id*. at 1245. A panel of this court upheld the trial court's decision that the police officer was a qualified expert because he testified that: (1) he was trained to administer the test; (2) he followed the proper procedures; (3) the test consisted of three ampoules of acid that change color to show the presence of marijuana; and (4) the sheriff's department routinely used the test. *Id*. As for Burkett's claim that the State failed to present a sufficient foundation for the reliability of the field test, which is Doolin's claim in the present case, the *Burkett* court concluded that the field test was admissible because "the results of this type of test have been admitted in other cases," citing *Houston v. State*, 553 N.E.2d 117, 119 (Ind. 1990) and *Bellamy v. State*, 259 Ind. 254,

286 N.E.2d 401 (1972).  *Id*. at 1246.

As Doolin observes, both *Houston* and *Bellamy*, upon which the *Burkett* court relied, were decided prior to the adoption of Rule of Evidence 702, with which we are concerned now.  Furthermore, neither *Houston* nor *Bellamy* challenged the reliability of the field test.[2] While *Burkett* ultimately determined that the field test on marijuana conducted by the officer at the jail was admissible, we are not persuaded that it stands for the broad proposition that any unnamed in-court field test for marijuana is admissible, so long as the testifying officer states he or she has experience with the test and that the department routinely uses it.  To the extent that *Burkett* could be interpreted to direct that result, we respectfully decline to follow it.

Here, although Deputy Petree provided a general overview of the several steps he intended to follow when conducting the test and stated that his department routinely utilizes the field test, he did not provide any specific name or otherwise identify the test, indicate its reliability or rate of accuracy or error, note the scientific principles on which it is based, or recognize any standards regarding its use and operation.  We agree with Doolin that the deputy's explanation at trial essentially was nothing more than: "break an ampoule of something over the challenged plant material and shake it up.  If whatever is in the ampoule causes the material to turn blue, it's marijuana." *Reply Br*. at 1.  The State simply presented

---

[2] In *Houston*, the defendant challenged the qualifications of the officer conducting the marijuana field test.  553 N.E.2d at 119.  In *Bellamy*, the defendant challenged the chain of custody of an envelope of heroin that was admitted into evidence; two field tests had been conducted on the substance at the scene and there was no objection at trial concerning those.  286 N.E.2d at 403.

no foundational evidence of the test used.  Because of this dearth of evidence regarding this field test, we find the State failed to establish the test's reliability under Rule 702(b), and the trial court abused its discretion in admitting the results into evidence.  *See West*, 805 N.E.2d at 914 (trial court erred by considering results of Draeger field test, conducted at scene to detect anhydrous ammonia, because of lack of evidence at trial regarding test's scientific reliability).  We note that our holding today does not represent a conclusion that all field tests of marijuana conducted in the courtroom are, per se, inadmissible; nor do we find that in-court field tests on marijuana may never be used as substantive evidence of guilt, as Doolin asks us to do.  Rather, we hold that under the facts and circumstances of this case, the trial court abused its discretion when it admitted the results of Deputy Petree's in-court field test because of the lack of foundation as to its reliability.  Having found error, we now determine whether the error requires reversal.

Improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction.  *Spires v. State*, 670 N.E.2d 1313, 1316 (Ind. Ct. App. 1996).  An error in the admission of evidence is not prejudicial if the evidence is merely cumulative of other evidence in the record.  *VanPelt v. State*, 760 N.E.2d 218, 224 (Ind. Ct. App. 2001), *trans. denied* (2002).

Here, there was substantial other evidence, besides the result of the in-court field test, that the plant material in question was marijuana.  First and foremost, Deputy Petree testified without objection that Doolin had admitted to him at the jail that "the marijuana was his" and

8

that "he wanted to take responsibility for it." *Tr.* at 40. Second, the circumstances surrounding the location of the substance – in a baggie, inside a velvet bag along with a set of scales hidden in a music CD case, all inside a locked glove box – suggest that it was not intended to be discovered. *See Boggs v. State*, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010) (identity of drug can be proven by circumstantial evidence), *trans. denied*. Third, Deputy Petree identified the green leafy substance as marijuana based on its odor and appearance. Our Supreme Court has held:

> Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound, persons experienced in the area may be able to identify cigarette smoke, marijuana, and even toluene. This is true even if every citizen may not be up to that task.

*Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001).

At trial, Deputy Petree testified that he had been a law enforcement officer for six years, graduating from the Indiana Law Enforcement Academy ("Academy") and attending yearly training as part of his job. At the time of Doolin's arrest, Deputy Petree was part of what is known as ICE, a team of eight officers chosen to conduct interstate criminal enforcement, patrolling the interstates and looking for contraband. He testified that he had received training regarding identifying drugs at the Academy, and he also took several classes relating to the interdiction of narcotics. Lieutenant Larry Deckard, a crime scene investigator and property room manager with of the Hendricks County Sheriff's Department, testified that Deputy Petree had "a lot" of law enforcement experience with marijuana cases and that many bags of marijuana were currently being stored in the property room under Deputy Petree's name. *Tr.* at 25.

9

We find that Deputy Petree's experience, training, and personal observations, along with other circumstantial evidence, sufficiently established the identity of the substance as marijuana. *See Halsema v. State*, 823 N.E.2d 668, 673 n.1 (Ind. 2005) (testimony of officer that he had received special training in production, manufacture and distribution of methamphetamine was sufficient to establish that substance was methamphetamine, even though substance was not scientifically determined to be methamphetamine); *Boggs*, 928 N.E.2d at 865-67 (Ind. Ct. App. 2010) (officer's testimony that based on his training and experience he had "no doubt" that green, leafy substance was marijuana was sufficient to establish identity of drug); *McConnell v. State,* 540 N.E.2d 100, 103-04 (Ind. Ct. App. 1989) (testimony of officer who was familiar with marijuana that substance at issue appeared to be marijuana was sufficient to establish that it was marijuana). Accordingly, we conclude that while it was error for the trial court to admit the in-court field test, the error was harmless in light of the other independent evidence of the identity of the substance.

Affirmed.

BAKER, J., and BROWN, J., concur.