## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 22 2016, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Bryant Johnson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 22, 2016

Court of Appeals Case No.
71A03-1603-CR-672

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1508-MR-10

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Bryant Johnson was convicted of murder, attempted murder, and battery. Johnson appeals his convictions, raising the sole issue of whether the trial court abused its discretion in admitting certain evidence. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] In the early morning hours of August 1, 2015, Justin Sharpe and Marcus Harris were passengers in a green SUV driven by Stephen Johnson ("Stephen"). Around 2:30 a.m., Stephen pulled out of a gas station and proceeded toward an intersection near 301 North Lafayette Street in South Bend, Indiana. While stopped at the intersection, a champagne-colored Chevrolet Tahoe pulled up to right of the green SUV and a white vehicle pulled up behind the green SUV. Stephen recognized the driver of the Tahoe as Johnson. Johnson then pulled out a revolver and fired four bullets in the direction of the green SUV. One of the bullets struck Stephen in the shoulder and at least one bullet struck Sharpe. As Stephen attempted to drive away, an individual in the white vehicle also fired at least three bullets in the direction of the green SUV.

[3] South Bend Police Officer John Cox heard the gunshots, but did not know where the sound was coming from until he received a ShotSpotter alert

notifying him the shots were fired near 301 North Lafayette Street.[1]  Upon arrival at that address, police officers observed multiple bullet holes in the green SUV's front passenger-side window and door; Sharpe was pronounced dead at the scene from multiple gunshot wounds.  Police officers then collected fragments of ammunition from the street and the green SUV indicating at least one of the guns used was either a .38 caliber special or a 357 magnum revolver.  Some of these fragments recovered from the scene matched the fragments removed from Sharpe's body during an autopsy.  On August 5, 2015, the State charged Johnson with murder, a felony; attempted murder as a Level 1 felony; and battery as a Level 5 felony.

[4]     At trial, the State elicited testimony pertaining to ShotSpotter technology from Paul Greene, the lead forensic analyst and lead customer service support engineer for SST Inc., the manufacturer of ShotSpotter.  Greene testified ShotSpotter is an acoustic gunshot detection and location system and its purpose is to provide law enforcement with rapid notification of when and where local gunfire occurs.  The system uses microphone sensors with GPS antennas to detect gunshots by recording nearly twenty acoustic measurements and a location server that measures the latitude and longitude of the gunshots recorded.  The system then plots the location of gunshots on a map and reports the location of gunshots to police departments.  SST Inc. guarantees

---

[1] Evidence pertaining to ShotSpotter is the sole issue on appeal, which we discuss in detail below.

ShotSpotter will detect and locate at least 80 percent of all outdoor detectable gunfire and will locate that gunfire to within 25 meters of where the weapon was actually fired. So you take where the weapon is fired, draw a 25 meter line out, draw a big single [sic] and we guarantee that at least 80 percent of the time that gunfire will have originated within that 25 meter or 50 meter diameter circle, actually, which actually comes out to about 150 feet diameter, 160 feet diameter or so.

Transcript at 267. Greene explained the more sensors that record a gunshot, the more precise the system can be. For example, if at least five sensors record a gunshot, then it is likely the system will pinpoint a location on the map within ten meters of the gunshot's location. *Id.* at 267-69.

[5] The State then moved to admit State's Exhibit 180, a detailed ShotSpotter forensic report of the August 1 incident. Specifically, the report includes a map showing the location of the shooting; a map showing the number of microphone sensors that recorded the shooting; and a table showing the exact time the gunshots were recorded and the strength and sharpness of the recordings. Johnson objected on the ground the report was cumulative. Specifically, Johnson expressed concern that one page of the report merely gave "a description about ShotSpotter . . . ." *Id.* at 271. The trial court agreed the one page was cumulative of Greene's previous testimony, but noted the remaining pages, which include the maps and tables, would assist the jurors in understanding Greene's testimony. Johnson objected again, this time arguing the remainder of the report was scientific evidence lacking proper foundation pursuant to Indiana Evidence Rule 702. Specifically, he expressed concern as

to how much ShotSpotter has been tested and whether it has been subjected to peer review. The trial court disagreed and overruled the objection as to the remainder of the report, noting, "I would find it to be . . . more of a weight issue than an admissible evidence issue and [an] argument that you could make, [Defense Counsel], should you choose to do so." *Id*. at 274.

[6] The jury found Johnson guilty as charged. At the sentencing hearing, the trial court entered judgment of conviction and ordered Johnson to serve an aggregate sentence of eighty-five years executed in the Indiana Department of Correction. This appeal ensued.

# Discussion and Decision

## I. Standard of Review

[7] The trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). This court will reverse the trial court's ruling only if it abused that discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000) (citation omitted), *trans. denied*.

# II. ShotSpotter Evidence

Johnson argues the trial court abused its discretion in admitting State's Exhibit 180.[2] Specifically, he contends the trial court failed to assess the reliability of the ShotSpotter technology pursuant to Rule 702(b). We disagree.

Rule 702(b) states, "Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles." Stated differently, "expert scientific testimony is admissible only if reliability is demonstrated to the trial court." *Doolin v. State*, 970 N.E.2d 785, 787 (Ind. Ct. App. 2012), *trans. denied*.

> The proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles. There is no specific test that must be considered in order to satisfy Rule 702(b). Rather, reliability may be established by judicial notice or, in its absence, by sufficient foundation to convince the trial court that the relevant scientific principles are reliable. In determining whether scientific evidence is reliable, the trial court must determine whether the evidence appears sufficiently valid, or, in other words, trustworthy, to assist the trier of fact.

*Id*. at 787-88 (citations and internal quotation marks omitted).

Prior to admission of Exhibit 180, the State elicited extensive testimony from Greene. Our review of Greene's testimony indicates he explained how the

---

[2] Johnson does not challenge Greene's testimony or any other exhibits the State admitted that contained evidence pertaining to ShotSpotter.

ShotSpotter system operates to inform local law enforcement of any shots fired in their jurisdiction. Specifically, he explained how the system generates reports pinpointing the location of gunshots within twenty-five meters. As noted above, Exhibit 180 is a ShotSpotter report prepared by Greene with regard to the August 1 incident and it is clear by the trial court's own words it determined Exhibit 180 would "help" and "assist" the jurors "in understanding the testimony." Tr. at 272. Therefore, contrary to Johnson's assertion, the trial court properly assessed the reliability of the ShotSpotter evidence prior to the admission of Exhibit 180.

[11] In addition, we note "Rule 702 is not intended to interpose an unnecessarily burdensome procedure or methodology for trial courts." *Turner v. State*, 953 N.E.2d 1039, 1050 (Ind. 2011) (citation and internal quotation marks omitted). Rather, the intent of Rule 702 is to liberalize the admission of reliable scientific evidence and therefore the evidence need not be conclusive to be admissible. *Id*. In the event shaky—but reliable—scientific evidence is admitted, the appropriate means of attacking such evidence is by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ." *Id*. (alteration in original) (citation omitted). For example, by cross-examining the witness, the opposing party has the opportunity to expose the differences between the actual evidence and the scientific theory. *Id*. at 1051. "The dissimilarities go to the weight rather to the admissibility of the evidence." *Id*. To the extent Johnson argues the evidence lacked reliability, the trial court concluded the evidence was reliable and would

assist the jury in understanding Greene's testimony. Even assuming the evidence was "shaky," the trial court correctly noted Johnson's reliability concerns went to the weight of the evidence, not its admissibility. Johnson had a full opportunity to attack the credibility of the evidence in an attempt to diminish any weight it carried with the jury. We conclude the trial court did not err in admitting Exhibit 180.

[12] Further, and assuming the trial court erred, we conclude any error was harmless. *See Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014) ("Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.") (citation omitted). Exhibit 180 merely shows a shooting occurred near 301 North Lafayette Street, and at trial, the State admitted numerous other ShotSpotter exhibits also showing a shooting occurred near 301 North Lafayette Street; Johnson does not challenge the admission of these other exhibits on appeal. In addition, many witnesses testified they heard a shooting occur, Stephen testified Johnson shot him, the green SUV had numerous bullet holes, and Sharpe was killed by a gunshot. This evidence undoubtedly indicates a shooting occurred. Exhibit 180 is no different and its admission did not prejudice Johnson.

# Conclusion

[13] The trial court did not abuse its discretion in admitting evidence. Accordingly, we affirm Johnson's convictions.

Affirmed.

Mathias, J., and Brown, J., concur.