# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KATHRYN C. BYROM**
Kendallville, Indiana

ATTORNEY FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

FILED
Aug 25 2014, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN BARNHART                           )
                                        )
    Appellant-Defendant,             )
                                        )
      vs.                         )    No. 57A04-1312-CR-601
                                        )
STATE OF INDIANA                        )
                                        )
    Appellee-Plaintiff.              )

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Robert E. Kirsch, Judge
Cause No. 57D01-1104-FA-14

**August 25, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

John Barnhart appeals his convictions and sentence for two counts of child molesting as class A felonies and one count of possession of marijuana as a class A misdemeanor. Barnhart raises two issues which we revise and restate as follows:

I.      Whether the trial court abused its discretion by excluding evidence that the victim submitted to a urine drug screen and that the results were negative; and

II.     Whether the trial court abused its discretion in sentencing him.

We affirm.

FACTS AND PROCEDURAL HISTORY

Jessica Jordan moved to Indiana in December 2010. Jordan's daughter, I.S., who was born on June 24, 1999, moved in with Jordan sometime between December 25, 2010, and the first week of January 2011. Barnhart and Jordan had been together since the end of August 2008, and he and his two daughters moved in with Jordan and her children. Barnhart was unemployed, and Jordan worked nights. Jordan and Barnhart shared the smaller of the two bedrooms in the apartment, while Barnhart's daughters slept in a bunk bed in the master bedroom, and I.S. slept on a mattress on the floor of the walk-in closet in the master bedroom. During this time frame, I.S. sometimes saw Barnhart smoke marijuana using a blue and orange pipe.

On April 20, 2011, Jordan, I.S., Barnhart, and one of Barnhart's daughters attended a wedding in Ohio and returned to Indiana shortly before Jordan was scheduled to work. That evening, while Jordan was at work, Barnhart went into the closet of the bedroom where I.S. was sleeping, woke her up, and started touching her. Specifically, Barnhart rubbed his penis up and down on her vagina, and his penis entered the outer and

2

inner lips of her vagina. Barnhart tried to "stick [his penis] in" her, and she screamed because it hurt. Transcript at 151. Barnhart also touched I.S.'s vagina with his tongue. Barnhart had an erection during the incident, and a white substance came out of Barnhart's penis and ended up on I.S.'s bed and leg.

That weekend, I.S. visited her grandmother, Angela Dreher, in Ohio. While there, I.S. took a walk with her aunts, who were Dreher's daughters, and when they all returned, Dreher's daughters told Dreher that I.S. had disclosed information about Barnhart. Dreher spoke with I.S., and after asking her what happened, and listening to I.S.'s answers, Dreher called the Sheriff's Department. Later, the Kendallville Police contacted Dreher to arrange an interview of I.S. by Beth Donovan of the Noble County Department of Child Services.

Detective Sergeant Lance Waters of the Kendallville Police Department observed the interview with I.S., which led him to obtain a search warrant for the home where I.S. lived. On April 28, 2011, the police executed the search warrant and discovered marijuana where I.S. had said it would be found, and the orange and blue pipe described by I.S. Police also collected the bed sheets and blankets from I.S.'s bed.

Detective Waters interviewed Barnhart, and Barnhart admitted to owning the marijuana and pipe that was recovered. Barnhart referred to I.S. as "that girl," which Detective Waters found significant, as it indicated an indifference towards I.S. on Barnhart's part. Id. at 192. Barnhart also told Detective Waters that none of his bodily fluids would be found on that sheet and that he never lay on that bed because that had always been I.S.'s bed. The police tested the bed sheets for DNA to compare with

3

samples taken from both I.S. and Barnhart. The bed sheet contained both I.S.'s and Barnhart's genetic material on it and seminal fluid that matched Barnhart's DNA.

On April 29, 2011, the State charged Barnhart with Count I, child molesting as a class A felony for licking I.S.'s vagina with his tongue; Count II, child molesting as a class A felony for penetrating I.S.'s vagina with his penis; Count III, possession of marijuana as a class A misdemeanor; and Count IV, contributing to the delinquency of a minor as a class A misdemeanor alleging that Barnhart provided I.S. marijuana.

On May 4, 2011, Joyce Moss, a registered nurse at the Fort Wayne Sexual Assault Treatment Center, interviewed and examined I.S. During the examination, I.S. told Moss that Barnhart's "pee pee touched [her] pussy," that she did not like it, and that he "licked [her] on [her] pussy, it was gross, [and] it hurt because he had a mustache." Id. at 222.

On February 22, 2013, Barnhart filed a motion in limine requesting that the State be prevented from presenting any evidence of any alleged prior sexual allegations of I.S. that had not been charged. The court granted this motion on October 22, 2013.

On October 29, 2013, the State filed a motion in limine requesting that the court exclude evidence of a drug screen administered to I.S. on the basis that the only available avenue to the defense to introduce such evidence was via hearsay, the test did not meet the scientific reliability standards set forth in Daubert, no witness qualified to address the issue of scientific reliability, and the admission would unnecessarily confuse the jury. Prior to trial, the court and parties discussed the State's motion in limine, and Barnhart's counsel argued that the evidence should be admitted. The court granted the motion in limine.

During trial, Barnhart made an offer of proof in which Stacey Beam, the Chief Probation Officer for the Noble County Probation Department, testified that she was asked to perform a urine drug screen on I.S. on April 27, 2011, that she sent the drug screen to Redwood Toxicology, and that the result indicated that the test was negative. Beam testified that the test did not have a "zero level cut off" because "there is the possibility of having carry over, if you will, if you were in a room with someone who is using we like to have a level of 20 nanograms per milliliter instead of the zero, so it did not go all the way to zero." Id. at 120. Beam also testified that a negative drug screen is tested only through one cycle and that if there is a positive screen after the first positive a second confirmatory test is run to make sure that the positive result was in fact positive. During cross-examination, Beam testified that she was not able to offer any testimony as to whether or not the underlying principles of the testing method were scientifically valid, whether the technique is capable of being tested repeatedly in order to show its performance over time, whether or not it had been subject to peer review and publication, whether there was a known potential error rate, or whether there existed a maintenance or standard in the performing of the technique of the test. Barnhart's counsel argued that Beam's testimony was relevant and that this was the procedure that law enforcement and the State decided to use in regards to this case. The prosecutor argued that the "basic problem here is a problem of scientific reliability." Id. at 128. The court granted the State's motion in limine and stated:

> I am going to go with my original gut reaction and say that it is not admissible. You know the problem here, I understand what [Barnhart's counsel] is saying, hey it is your, I don't want to say it is your, [i]t is the State's test. [Barnhart] had no control over it. It shows that there was, the

5

test shows that there was no marijuana in the victim's system that is relevant to the allegation, it has some relevancy to the allegation that [Barnhart] provided marijuana to the victim and therefore it should be admitted. But I guess if the test had been positive without a confirmatory test would it be admissible to show a positive drug screen? The answer is no, it wouldn't have been admissible. So I don't know how I could admit it.

Id. at 132.

I.S. testified to the foregoing with respect to the molestations. She also testified that Barnhart gave her marijuana to smoke during the period of time when she started school at Rome City and started living at Nelson Estates until the time that she stopped living there and went to live with her grandmother. I.S. also testified that she saw Barnhart using marijuana and an orange and blue pipe. I.S. stated that she used the pipe and cigars with marijuana and that the last time that Barnhart provided her marijuana was the night before April 20, 2011.

The jury found Barnhart guilty of Count I, child molesting as a class A felony, Count II, child molesting as a class A felony, and Count III, possession of marijuana as a class A misdemeanor. The jury found Barnhart not guilty of Count IV, contributing to the delinquency of a minor as a class A misdemeanor.

On November 26, 2013, the court held a sentencing hearing. The prosecutor asked Detective Waters whether I.S.'s statements in her interview differed from her testimony in court, and Detective Waters stated that I.S. was able to provide more details in her interview than she was able to in court. When asked whether I.S. told him how many instances of abuse occurred, Barnhart's counsel objected and stated: "She testified in Court. The Court has the evidence before him. He is re-characterizing her evidence, we

6

are going over it again." Id. at 360. The State argued in part that "[i]t . . . goes to what the State believes is an aggravating factor in terms of the repetitive nature of the crimes against her." Id. Barnhart's counsel argued that "essentially they are going into other crimes and wrongs and acts if they are saying it is outside of what's been charged" and cited Evidence Rule 404(b). Id. The court indicated that Rule 404(b) did not apply and that it would allow Detective Waters to testify.

Detective Waters testified that he became aware of allegations that had been made against Barnhart in Ohio in 2010, and Barnhart's counsel objected again. The court stated:

> To the extent and solely to the extent that [Barnhart] knew of allegations, not necessarily the details of the allegations, knew the allegations and knew that an allegation of prior sexual misconduct was made against him I think that might be appropriate to show knowledge I guess. But I really don't want to get into what those allegations were or whether the, uh, the facts surrounding them, that type of thing.

Id. at 363. Detective Waters testified that Barnhart had spoken with law enforcement in Ohio about certain allegations but was not charged.

The court found Barnhart's "very limited prior criminal history" and that imprisonment would be a hardship on his family as mitigators. Id. at 382. The court also observed that the Indiana Risk Assessment System "was low to moderate in all the areas, however he was put in the high risk category to reoffend, uh, it is my understanding simply because of the nature of this offense." Id. at 383. The court acknowledged that there had been prior allegations against Barnhart by I.S. in Ohio "so he had knowledge that there, he had knowledge that . . . he had been accused of similar inappropriate contact in the State of Ohio at the time this offense was committed." Id. The court also

7

found the following aggravators: Barnhart was in a position of trust with I.S., I.S. was eleven years old at the time of the offense, and Barnhart committed the offense within the presence or hearing of his two children. The court sentenced Barnhart to thirty years each on Counts I and II, child molestation as class A felonies, and one year on Count III, possession of marijuana, and ordered the sentences to be served concurrent with each other.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion by excluding evidence that I.S. submitted to a urine drug screen and that the results were negative. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. Hardiman v. State, 726 N.E.2d 1201, 1203 (Ind. 2000). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances presented. Id. "Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Fleener v. State, 656 N.E.2d 1140, 1141 (Ind. 1995) (citations omitted). In other words, we will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights. Williams v. State, 714 N.E.2d 644, 652 (Ind. 1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195 (2000).

Barnhart argues the negative drug screen was reliable and admissible as it was being offered to show the course of Detective Waters's investigation. Barnhart asserts

8

that urinalysis is a scientific technique that has become the conventional method of drug testing, that the purpose of the screen was to detect illegal substances and when none are detected it is reliable as negative, and that the State acquiesced to the reliability of the results of the drug screen because it did not request confirmatory testing. Barnhart argues that this court is guided by Ind. Evidence Rule 702(b) and that Beam's testimony meets the fourth factor in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993). Barnhart also contends that the evidence directly attacks I.S.'s credibility as she testified that Barnhart gave her marijuana the day before the wedding in Ohio.

The State argues that the court properly excluded scientific evidence of test results from I.S.'s drug screen because Barnhart's offer to prove never established the relevance of the evidence because it was taken four days after the disclosure on April 24, 2011, and those tests did not apply a zero cut off. The State also argues that the probation officer "was not the scientific expert contemplated when it comes to the admission of scientific evidence." Appellee's Brief at 8. The State asserts that the ruling cannot be held to have been anything more than harmless because of the remaining evidence, and the negative drug screen could have been used only to rebut the allegation in Count IV that Barnhart provided I.S. marijuana, for which the jury found Barnhart not guilty.

At trial, I.S. testified that Barnhart provided her marijuana to smoke and that she used the pipe and cigars. I.S. was then asked when was the last time Barnhart "would have provided" her marijuana, and I.S. answered: "The night before the wedding." Transcript at 148. Given that the wedding occurred on April 20, 2011, based upon I.S.'s testimony, Barnhart provided her marijuana on April 19, 2011. Beam collected I.S.'s

9

urine on April 27, 2011, or on the eighth day after Barnhart provided I.S. marijuana, and Beam testified that a negative result indicates no drug use within the "period of time" prior to the alleged use, but Barnhart does not point to the record and our review does not reveal what "period of time" applied to the drug screen. Id. at 126.

With respect to the reliability of the scientific evidence, Ind. Evidence Rule 702(b) provides that "[e]xpert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable." To the extent Barnhart argues that urinalysis is a conventional scientific technique, we observe that he also concedes that trial courts are still bound to only consider scientific testimony if it has some substantial indicia or reliability. In determining reliability, various factors have been identified. McGrew v. State, 682 N.E.2d 1289, 1292 (Ind. 1997). Such factors may include, but are not limited to: (1) whether the technique has been or can be empirically tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error as well as the existence and maintenance of standards controlling the technique's operation; and (4) general acceptance within the relevant scientific community. Id. at 1292 n.5 (citing Daubert, 509 U.S. at 593-595, 113 S. Ct. at 2796-2797). Although these considerations are useful in determining reliability, the Indiana Supreme Court has held: "there is no specific 'test' or set of 'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." Id. at 1292.

Here, the witness, Beam, was a probation officer who merely took custody of I.S.'s urine sample; did not analyze the sample herself, but sent it off to Redwood Laboratory for testing. Beam testified that the drug screen tested for marijuana, that the

10

test is from Redwood Toxicology in California, and that her department used Redwood Toxicology since the former chief probation officer liked the company. When asked whether she sends a positive test for a confirmatory test, Beam testified in part that "[i]f the first test shows a positive they will run a second test to verify through the GMAC I believe, it is gas chromatic, I am not sure exactly, it is some scientific word . . . ." Transcript at 122. Beam did not testify what machine was used to test the urine. Beam also testified that she was not able to offer any testimony as to whether or not the underlying principles of the testing method were scientifically valid, whether the technique is capable of being tested repeatedly in order to show its performance over time, whether or not it had been subject to peer review and publication, whether there was a known potential error rate, or whether there existed a maintenance or standard in performing the technique of the test. In light of the foregoing, we cannot say that the trial court abused its discretion in excluding evidence of the drug screen. See Doolin v. State, 970 N.E.2d 785, 789 (Ind. Ct. App. 2012) (holding that the State failed to establish the reliability of a field test for marijuana under Rule 702(b) and that the trial court abused its discretion in admitting the results into evidence where a sheriff's deputy provided a general overview of the several steps he intended to follow when conducting the test, and stated that his department routinely utilized the field test but did not provide any specific name or otherwise identify the test, indicate its reliability or rate of accuracy or error, note the scientific principles on which it is based, or recognize any standards regarding its use and operation), trans. denied.

Even assuming that the court abused its discretion, we cannot say that Barnhart's substantial rights were affected. The evidence directly related to Count IV, contributing to the delinquency of a minor as a class A misdemeanor, of which the jury found Barnhart not guilty. With respect to Count III, possession of marijuana, Barnhart admitted to owning the marijuana and pipe that was recovered. With respect to Counts I and II, child molesting as class A felonies, the jury heard I.S.'s testimony regarding the molestation, Detective Waters's testimony that Barnhart stated that none of his bodily fluids would be found on the sheet and that he never lay on that bed because that had always been I.S.'s bed, as well as evidence that Barnhart's DNA and sperm were on I.S.'s bed sheet. Consequently, we conclude that any error in excluding the drug test is harmless. See Williams, 714 N.E.2d at 652 (holding that excluded testimony was unlikely to have weighed appreciably in the defendant's favor in light of the DNA and other evidence that connected him to the crime and that the exclusion of certain testimony was harmless error).

## II.

The next issue is whether the court abused its discretion when sentencing Barnhart. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E. 2d 218 (Ind. 2007). A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence − including a finding of aggravating and mitigating factors if any − but the record does not support the reasons;"

12

(3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Id. at 490-491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491.

> Barnhart argues that the trial court abused its discretion by stating the following:

> On the aggravating side, uh, the Court does acknowledge from the evidence it appears that there had been prior allegations against [Barnhart] by this same victim in the State of Ohio, so he had knowledge that there, he had knowledge that, uh, he had been accused of similar inappropriate contact in the State of Ohio at the time this offense was committed.

Transcript at 383. Barnhart argues that this evidence was outside the record and was excluded by the court's previous grant of his motion in limine.

The State argues that the court did not abuse its discretion because the sentencing considerations did not implicate the rules of evidence in the same manner as would a trial, and past wrongs may be considered at sentencing. The State also contends that this was one of many aggravating factors.

Initially, we observe that strict rules of evidence do not apply in sentencing hearings. See Ind. Evidence Rule 101(c) (2013) ("The rules, other than those with respect to privileges, do not apply in the following situations . . . [p]roceedings relating to . . . sentencing . . . .").[1] We also observe that Barnhart's motion in limine mentioned the jury, which was not involved at the sentencing hearing, and the Rules of Evidence.

---

[1] Ind. Evidence Rule 101 was subsequently amended effective January 1, 2014, and the relevant portion is now found in subsection (d).

Specifically, his motion requested that the State be prevented "from presenting any evidence of any alleged prior sexual allegations of the alleged victim that have not been charged against [him] on the grounds that said evidence is irrelevant, prejudicial and inflammatory toward the *jury pursuant to the Rules of Evidence*." Appellant's Appendix at 48 (emphasis added).

To the extent Barnhart suggests that the evidence relied upon by the court was outside the record, we note that Detective Waters testified that he spoke with Barnhart, that Barnhart showed awareness of the allegations that had been made against him in Ohio, and that he had stated "something along the lines of she has claimed this before." Transcript at 364. Further, the court limited its consideration of the evidence when it stated:

> To the extent and solely to the extent that [Barnhart] knew of allegations, not necessarily the details of the allegations, knew the allegations and knew that an allegation of prior sexual misconduct was made against him I think that might be appropriate to show knowledge I guess. But I really don't want to get into what those allegations were or whether the, uh, the facts surrounding them, that type of thing.

Id. at 363. Under the circumstances, we cannot say that the trial court abused its discretion in acknowledging that Barnhart had knowledge that he had been accused of similar inappropriate contact in the State of Ohio at the time the offense occurred.

Even assuming that the trial court abused its discretion with respect to acknowledging Barnhart's knowledge of prior accusations, we observe that the court also found three other aggravators which Barnhart does not challenge. In light of the remaining aggravators, we can say with confidence that the trial court would have imposed the same advisory and concurrent sentences for Counts I and II had it considered

14

only these aggravators.  See, e.g., Drakulich v. State, 877 N.E.2d 525, 535 (Ind. Ct. App. 2007) (holding that we could say with confidence that the trial court would have imposed the same sentence if it considered only the proper aggravators), trans. denied.

## CONCLUSION

For the foregoing reasons, we affirm Barnhart's convictions and sentence for two counts of child molesting as class A felonies and one count of possession of marijuana as a class A misdemeanor.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.