## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 28 2015, 6:21 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Aaron J. Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 28, 2015

Court of Appeals Cause No. 55A01-1312-CR-524

Appeal from the Morgan Superior Court

The Honorable Christopher Burnham, Judge

Cause No. 55D02-1109-FB-1157

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Aaron Taylor was convicted of two counts of criminal confinement, both Class B felonies; two counts of intimidation, both Class C

felonies; criminal recklessness, a Class D felony; and pointing a firearm, a Class D felony. Taylor raises the following issues for our review: 1) whether the trial court abused its discretion in excluding certain evidence offered to establish a citizen's arrest defense; and 2) whether there was sufficient evidence to support one of his convictions of intimidation. Concluding the trial court did not abuse its discretion in excluding evidence and that there was sufficient evidence of intimidation, we affirm.

## Facts and Procedural History[1]

Taylor hired an attorney and filed bankruptcy in August 2011. Morgan County Rural Water ("Water Company") was named as a creditor. Shortly thereafter, Taylor received a letter from Glen Miller, the Water Company's manager, demanding that Taylor make an adequate assurance payment as a condition to keeping his water turned on. Taylor contacted his attorney, and he advised Taylor that a membership fee, which Taylor had already paid the Water Company and which had been applied towards his delinquency, was a sufficient adequate assurance payment. Although the Water Company disagreed, neither party brought the dispute to the attention of the bankruptcy court.

---

[1] We held oral argument in this case on October 20, 2014, in Indianapolis, Indiana, and would like to thank the attorneys for their excellent arguments.

[3]     The Water Company had an easement and right-of-way that provided the Water Company the right to "place, construct, install and lay, and thereafter use, operate, inspect, repair, maintain, replace and remove water pipes and lines, meters and meter enclosures, valves and related structures in, under, through, upon, over and across" the land on which Taylor's home sits. Exhibit 1. Pursuant to a water user's agreement, the Water Company also retained ownership of the water meter and had "the exclusive right to use the cut-off valve and to turn it on and off." Exhibit 2. It also stated that "a failure to pay water charges shall result in the . . . termination of water services . . . ." *Id.* Users agreed "to maintain free and unobstructed access between the meter pit and the road or street." *Id.* Taylor signed the water user's agreement.

[4]     Taylor did not make the entire adequate assurance payment demanded by the Water Company. Accordingly, Miller and three other Water Company employees went to Taylor's home to disconnect his water meter on September 8, 2011. The men did not notify Taylor that they were there, but Taylor had parked a large trailer over the water meter pit, so the trailer had to be moved in order for the men to access it. Without seeking permission, the men moved the trailer and removed the water meter. Taylor's girlfriend, Rachel Garriott, noticed the water shut off and yelled for Taylor. Taylor told Garriott to call the police. He then grabbed his shotgun, went into the front yard, and yelled "stop." Transcript at 416. The men did not stop, so Taylor fired his shotgun. While the direction of the shot was disputed at trial, the fact that Taylor fired his shotgun was not. Garriot said Taylor fired the gun "straight down," *id.* at

416, but Miller said the shot struck the ground "in front of us," *id.* at 181. The men stopped and Taylor stood between them and their vehicles, pointing his loaded shotgun towards them. At that time, Miller called the sheriff and one of the men began filming the incident with his cell phone. While standing between the men and their vehicles, Taylor told Garriott that she better pay the bill "before I end up f****** killing one of these guys, especially someone in the green shirt," referring to Miller. Ex. 4 at 7:25-:35. Taylor then told them that everyone but Miller could leave. However, because the men still felt threatened, they waited for the police to arrive.

[5] Eventually a police officer arrived and Taylor unloaded and put down his shotgun after being ordered twice to do so. Although he did not arrest Taylor at the time, the officer wrote a report and reviewed the cell phone video. The State charged Taylor with two counts of criminal confinement with a deadly weapon, both Class B felonies; criminal recklessness with a deadly weapon, a Class D felony; two counts of intimidation-one for threatening Miller with a deadly weapon with the intent that Miller engage in conduct against his will (Count 4) and one for threatening Miller with a deadly weapon with the intent that Miller be placed in fear of retaliation for a prior lawful act (Count 5), both Class C felonies; and pointing a firearm, a Class D felony.

[6] A jury trial was held in October 2013. Before jury selection began, the trial court ruled in response to the State's motion in limine that Taylor would be prohibited from raising a citizen's arrest defense unless and until the evidence showed that the men committed a felony. During trial, Taylor sought to

introduce into evidence a section of the Bankruptcy Code and a section of the Indiana Administrative Code, which he claimed would support his arguments relating to the citizen's arrest defense. The trial court sustained the State's objections to admission of this evidence, finding it was not relevant. The jury was instructed regarding Taylor's right to use reasonable force in defense of his dwelling and curtilage, but it found him guilty on all counts. He now appeals.

# Discussion and Decision

## I. Exclusion of Evidence

[7] Taylor believes the trial court abused its discretion when it barred him from presenting a citizen's arrest defense. Specifically, Taylor argues that the court erred by excluding evidence of 11 U.S.C. section 366 ("Bankruptcy Statute") and 170 Indiana Administrative Code 6-1-1 et seq. ("Utility Regulation"), which he argues would have shown that the men committed a felony by removing the water meter and moving his trailer. Thus, he argues the excluded evidence was relevant to the citizen's arrest defense.

[8] We review the trial court's decision to exclude evidence for an abuse of discretion. *Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014). "An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances presented." *Id.*

[9] The right to "a meaningful opportunity to present a complete defense" is guaranteed by the United States Constitution. *Crane v. Kentucky*, 476 U.S. 683,

690 (1986). When relevant evidence that is central to the defendant's case is excluded, this right is abridged. *Allen v. State*, 813 N.E.2d 349, 361 (Ind. Ct. App. 2004), *trans. denied*. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401 (2013).

[10] The trial court found the Bankruptcy Statute, which governs utility service during bankruptcy proceedings,[2] and the Utility Regulation, which provides procedures and notice requirements for water utility companies,[3] to be irrelevant to Taylor's citizen's arrest defense and excluded them. Taylor claims he was denied a meaningful opportunity to present his defense. The citizen's arrest defense is authorized by Indiana statute. It states:

> A person other than a law enforcement officer is justified in using reasonable force against another person to effect an arrest or prevent the other person's escape if:
> (1) a felony has been committed; and
> (2) there is probable cause to believe the other person committed that

[2] A "utility may . . . discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment." 11 U.S.C. § 366(b).

An "assurance of payment" can be a cash deposit, a prepayment of utility consumption, or another form of security agreed upon by the parties. 11 U.S.C. § 366(c)(1)(A)(i), (v), (vi).

[3] Specifically, "service to any residential customer shall not be disconnected for a violation of any rule or regulation of a utility or for the nonpayment of a bill, except after seven (7) days prior written notice to the customer" stating in part the date of proposed disconnection. 170 Ind. Admin. Code 6-1-16(e) (2014). "Immediately preceding the actual disconnection of service, the employee of the utility" shall identify himself and announce the purpose of his presence. 170 I.A.C. 6-1-16(f).

felony.

However, such a person is not justified in using deadly force unless that force is justified under [Ind. Code § 35-41-3-2].[4]

Ind. Code § 35-41-3-3(a) (emphasis added).

[11] Taylor contends the excluded evidence was relevant for showing the Water Company employees committed a felony, entitling him to present the citizen's arrest defense. Specifically, he claims that because the removal of the water meter was in contravention of the Bankruptcy Statute and the Utility Regulation, the men committed theft and criminal mischief. However, our review of the record shows that neither the Bankruptcy Statute nor the Utility Regulation established the commission of either felony.

[12] Taylor contends the men committed theft by unlawfully taking Taylor's access to water. Theft occurs when "[a] person . . . knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use . . . ." Ind. Code § 35-43-4-2(a) (emphasis added). Here, the Water Company had an easement and right-of-way that provided it access to the water meter. Additionally, Taylor signed a water user's agreement which provided that the Water Company retained ownership of the water meter and had "the exclusive right to use the cut-off

---

[4] In relevant part, Indiana Code section 35-41-3-2 states, "[a] person: is justified in using reasonable force, including deadly force, against any other person . . . [and] does not have a duty to retreat . . . if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage, or occupied motor vehicle." Ind. Code § 35-41-3-2(d).

valve and to turn it on and off." Exhibit 2. The agreement also stated that "a failure to pay water charges shall result in the . . . termination of water services . . . ." *Id.* Taylor did not make the entire payment demanded by the Water Company—a condition which authorized the Water Company to terminate Taylor's water services under the water user's agreement. Accordingly, whether the termination of his water service was appropriate is a matter of contract law, not criminal law. *See Jamrosz v. Resource Benefits, Inc.*, 839 N.E.2d 746, 759 (Ind. Ct. App. 2005) (stating that the criminal conversion statute does not criminalize bona fide contract disputes), *trans. denied*. Neither the Bankruptcy Statute nor the Utility Regulation prove a theft occurred under these circumstances.

[13] Taylor also argues the men committed criminal mischief by moving the trailer that was parked over the water meter pit. Criminal mischief occurs when "[a] person . . . recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent . . . ." Ind. Code § 35-43-1-2(a). It is a felony if "the damage causes a substantial interruption or impairment of utility service rendered to the public." Ind. Code § 35-43-1-2(a)(2)(B). Taylor fails to acknowledge that he agreed "to maintain free and unobstructed access between the meter pit and the road or street." Exhibit 2. The men moved the trailer because Taylor did not maintain free and unobstructed access to the meter pit. Taylor also has shown no evidence that his trailer was damaged in the process or that the alleged damage caused an interruption in water service rendered to the public. To the extent that the

excluded evidence would have proven a violation under bankruptcy law or Indiana administrative law, the violation would have been of a civil, rather than criminal, nature. The excluded evidence was irrelevant to proving criminal mischief for the purposes of Taylor's citizen's arrest defense.

[14] Even if we assumed the men committed a felony, the citizen's arrest defense would still not save Taylor's actions due to his use of unlawful deadly force.[5] When available, the citizen's arrest defense justifies a person's use of reasonable force against another person. Ind. Code § 35-41-3-3(a). This statute only permits the use of deadly force as provided in Indiana Code section 35-41-3-2. Deadly force is "force that creates a substantial risk of serious bodily injury." Ind. Code § 35-31.5-2-85. Taylor argued the defense of property under Indiana Code section 35-41-3-2 at trial, but the jury was not persuaded.

[15] The record shows that Taylor knew he was delinquent on his water bill. He discussed this with his attorney and even tried to prevent the Water Company from turning his water off by parking a trailer over the meter pit. When Taylor's water was shut off, he knew why, and he knew who was on his property. He could not have reasonably believed deadly force was necessary. Despite that knowledge, Taylor grabbed his shotgun and fired off a shot in his

---

[5] The dissent believes Taylor should have been allowed to introduce the Bankruptcy Statute and Utility Regulation because he had a right to try to show he was permitted to defend his property by effecting a citizen's arrest at gunpoint. Yet, the dissent also acknowledges that he likely would have been unsuccessful given that his self-defense claim was rejected by the jury. We do not discount a person's right to defend his property, but as stated herein, there are limits to that right. A person is not entitled in every circumstance to use deadly force in defending himself or another person, let alone his property.

front yard. Taylor then held the four men at gunpoint with the loaded shotgun even though they were leaving his yard. His actions constitute the unlawful use of deadly force. *See Nantz v. State*, 740 N.E.2d 1276, 1280-81 (Ind. Ct. App. 2001) (pointing a loaded firearm at man's head created a substantial risk of serious bodily injury and was an unreasonable use of force in defense of property), *trans. denied*; *see also Upp v. State*, 473 N.E.2d 1030, 1032 (Ind. Ct. App. 1985) (firing gun close to man created a substantial risk of bodily injury because bullet could have ricocheted). Because "deadly force may never be used by a non-law enforcement officer to effect the arrest or prevent the escape of a felon[,]" *Rose v. State*, 431 N.E.2d 521, 523 (Ind. Ct. App. 1982), the trial court did not abuse its discretion in excluding evidence pertaining to Taylor's citizen's arrest defense.[6]

## II. Sufficiency of Evidence

[16] Taylor also challenges his conviction of Count 4, intimidation.[7] He argues that there was insufficient evidence for the jury to find that he threatened Miller

---

[6] Taylor also claims on appeal that the excluded evidence was relevant to his defense to Count 5, intimidation, which requires a person to be placed in fear of retaliation for a prior lawful act. *See* Ind. Code § 35-45-2-1(a)(2). Although Taylor explained to the trial court that the evidence was relevant for showing that the actions of the men were unlawful, our review of the transcript shows that these arguments were made—and the objections were ruled on—in the context of his claims of self-defense and citizen's arrest defense. Taylor did not specifically argue that the excluded evidence was relevant to his charge of intimidation at trial, and therefore, it is forfeited on appeal. *See Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999) (A defendant "is limited to the specific grounds argued to the trial court and cannot assert new bases for admissibility for the first time on appeal.").

[7] We note that Taylor states there was insufficient evidence for his intimidation conviction under Count 5. *See* Appellant's Brief at 13. However, the substance of his argument addresses his intimidation conviction under Count 4. Thus, we address the sufficiency of the evidence supporting a conviction of Count 4.

with the intent that Miller engage in conduct against his will. *See* Ind. Code § 35-45-2-1(a)(1) (2011).

[17] "In reviewing claims of insufficient evidence, we consider only the evidence supporting the verdict and any reasonable inferences to be drawn therefrom." *VanMatre v. State*, 714 N.E.2d 655, 657 (Ind. Ct. App. 1999). We will neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 657-58. The conviction will be affirmed if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Hyppolite v. State*, 774 N.E.2d 584, 598 (Ind. Ct. App. 2002), *trans. denied*.

[18] Under Count 4, the State had to prove that Taylor threatened Miller with the intent that Miller engage in conduct against his will. *See* Ind. Code § 35-45-2-1(a)(1); Appellant's Appendix at 23. "Threat means an expression, by words or action, of an intention to: (1) unlawfully injure the person threatened or another person . . . [or] (2) unlawfully subject a person to physical confinement or restraint . . . ." Ind. Code § 35-45-2-1(d) (quotation marks omitted).

[19] Our review of the record shows that the men were leaving when Taylor walked into the front yard, told the men to stop, and fired his shotgun. The men stopped once Taylor fired his shotgun, and Taylor then stood between them and their vehicles, holding them at gunpoint with a loaded shotgun. Taylor's actions alone constituted a threat, and the men were prevented from leaving. Thus, they were held against their will. Taylor then told Garriott that she better

pay the bill "before I end up f****** killing one of these guys, especially someone in the green shirt." Ex. 4 at 7:25-:35. He said this while holding Miller—who was wearing a green shirt—at gunpoint. Taylor's words and actions expressed an intention to injure Miller in order to hold him there against his will. There was sufficient evidence for the jury to find Taylor guilty of intimidation beyond a reasonable doubt.

# Conclusion

[20] The trial court did not abuse its discretion in excluding evidence of bankruptcy law or Indiana administrative law, and there was sufficient evidence for the jury to find Taylor guilty of intimidation. Taylor's convictions are affirmed.

[21] Affirmed.

Kirsch, J., concurs.
Baker, J., dissents with separate opinion.

## IN THE
# COURT OF APPEALS OF INDIANA

Aaron J. Taylor,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 28, 2015

Court of Appeals Cause No.
55A01-1312-CR-524

Appeal from the Morgan Superior
Court

The Honorable Christopher
Burnham, Judge

Cause No. 55D02-1109-FB-1157

**Baker, Judge, dissenting.**

[22] I respectfully dissent. The constitutional right to have one's day in court and, in a criminal context, to present a complete defense, is sacrosanct. I believe that in this case, Taylor was denied that right. He has consistently tried to argue that he sincerely believed that he was defending his property. And in this State, under certain circumstances, he is permitted to do so—even at gunpoint. In my opinion, Taylor has the right to try to show that those circumstances were present in this case.

[23] I believe that it is especially absurd that the evidence excluded by the trial court in this case consisted of a federal statute and a section of the Indiana Administrative Code. To say that a criminal defendant is not permitted to introduce *the law* into evidence as part of his defense goes, in my opinion,

several steps too far. Both of these pieces of legislation are relevant to Taylor's defense and to the case as a whole.

[24] We are quick to say—and rightly so—that citizens are charged with the knowledge of the law, whether or not they have actual knowledge to that effect. *See, e.g.*, *Kirk v. State*, 256 Ind. 480, 484, 269 N.E.2d 751, 754 (Ind. 1971) (affirming conviction in part because defendant "was charged with the knowledge of the content of the statute"); *Zakrasek v. State*, 197 Ind. 249, 249, 50 N.E. 615, 615 (Ind. 1926) (holding that "[a]ll persons are charged with knowledge of the criminal laws which define crimes"). In this case, Taylor both knows and seeks to apply the content of potentially relevant statutes. To hold that he has no right to do so seems to be particularly unfair given that we would pretend he had knowledge of the laws under which he was convicted even if he did not.

[25] Whether Taylor's claims would ultimately succeed is beside the point (and indeed, given that the jury was not persuaded by Taylor's self-defense claim, it seems unlikely that the citizen's arrest defense would have been any more successful). Instead, I believe that the focus should be on Taylor's fundamental right to present a full and complete defense. He was denied that right in this case. Therefore, I would reverse his convictions and remand the case for a new trial, at which Taylor would be afforded the right to present a full defense, to include both self-defense and a citizen's arrest defense.