## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 21 2016, 6:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John L. Tompkins
Brown Tompkins Lory & Mastrian
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Richard Vance Hastings,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 21, 2016

Court of Appeals Case No.
29A02-1507-CR-982

Appeal from the Hamilton
Superior Court

The Honorable Gail Bardach,
Judge

Trial Court Cause No.
29D06-1409-F6-7817

**Mathias, Judge.**

[1]     Following a jury trial, Richard Hastings ("Hastings") was convicted in Hamilton Superior Court of Level 6 felony for operating a motor vehicle while

intoxicated with a blood alcohol equivalent of 0.08 or more with a prior conviction within five years. On appeal, Hastings presents two issues, one of which we find dispositive: whether the trial court erred in excluding the testimony of Hastings' proffered expert witness. Concluding that the trial court abused its discretion in excluding the testimony of this witness and that this exclusion was not harmless, we reverse and remand.

## Facts and Procedural History

[2] On the evening of September 12, 2014, Officer Charles Nichols ("Officer Nichols") of the Westfield Police Department was on patrol when he saw a black Jeep Wrangler traveling at 65 miles per hour in a 40-mile-per-hour construction zone on U.S. Highway 31. Officer Nichols initiated a traffic stop and spoke with Hastings, who was driving the Jeep. Although Hastings claimed to have had only one drink earlier in the evening, Officer Nichols noticed that Hastings had red, bloodshot eyes and also observed two unopened cases of beer in the back of the Jeep.

[3] Believing that Hastings might be intoxicated, Officer Nichols instructed Hastings to undergo three field sobriety tests: the horizontal gaze nystagmus test, the nine-step walk-and-turn test, and the one-leg stand test. Hastings failed all three tests. Officer Nichols then transported Hastings to the police station, where he tested Hastings with a chemical breath test. This test indicated that Hastings' blood alcohol equivalent ("BAE") was 1.08 grams per 210 liters of breath.

[4] On September 17, 2014, the State charged Hastings with Class C misdemeanor operating a motor vehicle while intoxicated, Class C misdemeanor operating a motor vehicle with a BAE of 0.08 or greater, Level 6 felony operating a motor vehicle while intoxicated and having a prior conviction within five years, and Level 6 felony operating a motor vehicle with a BAE of 0.08 or greater and having a prior conviction within five years.

[5] On the day prior to trial, the State filed a motion in limine seeking to prevent Hasting's expert witness, Dr. Robert Belloto, Jr. ("Dr. Belloto"), from testifying regarding the specific chemical breath test device used on Hastings, the Intoxylizer EC/IR II. The trial court held a hearing on this motion immediately before the jury trial began. The State orally moved to expand its motion in limine to include other areas of Dr. Belloto's testimony. The trial court ruled from the bench as follows:

> I'm going to grant the State's motion with respect to [Dr. Belloto's] testimony. I'm granting the motion with respect to everything in both written motions. I'm also granting the motion that the State is now making orally. *That doesn't exclude him from testifying.* It does exclude him from testifying before the jury until such time as we have a hearing out of the presence of the jury to determine what he will, whether he is qualified as an expert on anything having to do with this trial, anything relevant in this trial. *I'm not forever excluding his testimony, that's not what a motion in limine does.* What it does is exclude his testimony until such time as I make a determination with him on the stand as to what his testimony would be, outside the presence of the jury, that it is, that he does qualify as an expert and that his testimony would be relevant.

Tr. pp. 17-18 (emphasis added).

[6] At the conclusion of the State's case-in-chief, Hastings called Dr. Belloto as a witness. Dr. Belloto was then questioned by both parties outside the presence of the jury to determine his qualifications as an expert. The trial court ruled:

> I don't find that Dr. Belloto satisfies the requirement for the Court to accept him as an expert to testify in this area. I just have a really difficult time believing that any pharmacist in any drug store could walk into a courtroom and testify in an operating while intoxicated case as an expert on this issue, and that is the position that he has taken. He has been, he has testified approximately 20 times, he said. He hasn't been trained with respect to anything except the various machines. He's studied pharmacy, he's studied pharmo, pharmokinetics. So have a lot of other people. I don't find him to be an expert.

Tr. pp. 171-72.

[7] At the conclusion of the first stage of the trial, the jury found Hastings guilty of both misdemeanor counts. Hastings then pleaded guilty to the Level 6 felony enhancements, i.e., he admitted that he had a prior conviction for operating while intoxicated within the past five years. At sentencing, the trial court merged the other convictions into the one count of Level 6 felony operating a motor vehicle with a BAE of 0.08 or greater while having a prior conviction within the last five years. The court sentenced Hastings to 910 days, with 360 days executed and 550 days suspended to probation. Hastings now appeals.

## Discussion and Decision

### A. *Standard of Review*

[8] Hastings first argues that the trial court erred in excluding the testimony of Dr. Belloto. Decisions regarding the admission of evidence are entrusted to the sound discretion of the trial court, and we review the court's decision only for an abuse of that discretion. *Wells v. State*, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009), *trans. denied*. The trial court's ruling on the admission of evidence constitutes an abuse of discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

### B. *Procedural Claims*

[9] Hastings first argues that the procedure used by the trial court to address the State's objection to Dr. Belloto's testimony was so unfair as to constitute fundamental error. Because he made no objection to the trial court's procedure below, Hastings must argue that the trial court's procedure was fundamental error. *See Sampson v. State*, 38 N.E.3d 985, 992 (Ind. 2015) (noting that the failure to object at trial waives the issue for review unless fundamental error occurred). The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default or "waiver" precluding consideration of the issue on appeal. *Id*. However, the fundamental error exception applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Id*. Also, harm is not

shown by the fact that the defendant was ultimately convicted. *Id*. Instead, harm is found when error is so prejudicial as to make a fair trial impossible. *Id*.

[10] Hastings complains that the trial court erred by permitting the State to file its motion in limine the day before trial. However, the trial court had issued a pre-trial order, applicable to both parties, that set the day before trial as the deadline for such motions. We fail to see how this constitutes error. Moreover, Hastings refers us to no authority (and we are aware of no such authority) that would require the State to file a pre-trial motion in order to object to Dr. Belloto's testimony. The State would have been within its rights to simply object to Dr. Belloto's testimony during the trial. As noted by the State on appeal, it was not the prosecutor's burden to disqualify Dr. Belloto's testimony; it was Hastings' burden to establish Dr. Belloto as an expert. *See Prewitt v. State*, 819 N.E.2d 393, 410 (Ind. Ct. App. 2004) ("the proponent of expert testimony bears the burden of establishing the foundation and reliability of the scientific principles and tests upon which the expert's testimony is based."); *Ollis v. Knecht*, 751 N.E.2d 825, 829-30 (Ind. Ct. App. 2001) ("[T]he party wishing to admit the expert's testimony has the burden of proving that the evidence is admissible.").[1]

[11] Furthermore, the cases to which Hastings cites are readily distinguishable. In fact, the cases he cites involve the exclusion of witnesses who were not timely disclosed. *See, e.g., Williams v. State*, 714 N.E.2d 644, 651 (Ind. 1999); *Cook v.*

---

[1] *See also* Robert L. Miller, Jr., 13 Ind. Practice, Evidence § 702.207 (3d ed.).

*State*, 675 N.E.2d 687, 691 (Ind. 1996); *Wiseheart v. State*, 491 N.E.2d 985, 991 (Ind. 1986). None of these cases involves a determination that a witness was not qualified to testify as an expert.

[12] Hastings also complains that the exclusion of his expert witness denied him his right to present a defense and witnesses in his favor. Our supreme court has explained:

> Every defendant has the fundamental right to present witnesses in their own defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 19(1967); *Kellems v. State*, 651 N.E.2d 326, 328 (Ind. Ct. App. 1995). This right "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington*, 388 U.S. at 19. At the same time, *while the right to present witnesses is of the utmost importance, it is not absolute. See Chambers*, 410 U.S. at 302; *Kellems*, 651 N.E.2d at 328. "*In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.*" *Chambers*, 410 U.S. at 302.

*Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998), *aff'd in relevant part on reh'g*, 711 N.E.2d 1237 (Ind. 1999) (emphasis added).

[13] Here, the trial court's exclusion of Dr. Belloto's testimony was done pursuant to the established Indiana Rules of Evidence. The mere fact that the trial court may have erred in excluding the evidence does not transform any evidentiary error into constitutional error. In short, Hastings has not persuaded us that the

procedure used by the trial court to determine whether Dr. Belloto should be permitted to testify as an expert constituted fundamental error.

## C. *Indiana Evidence Rule 702*

Hastings argues that the trial court abused its discretion by excluding Dr. Belloto's testimony.[2] The admission of expert testimony is governed by Indiana Evidence Rule 702, which provides:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

---

[2] The State claims that Hastings waived his claim regarding the exclusion of Dr. Belloto's testimony because he allegedly failed to make an offer of proof. Pursuant to Indiana Evidence Rule 103(a)(2), "a party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Here, Dr. Belloto was examined extensively by both parties regarding his qualifications as an expert witness. Included in this questioning was sufficient information to reveal what the substance of Dr. Belloto's testimony would have been, i.e., the effects of alcohol on the human body and how alcohol is absorbed and metabolized by the body. It is also apparent that he would have testified to some extent regarding the procedures and chemistry used in the chemical breath machines for which he has received training. We accordingly decline to hold that Hastings failed to preserve his appellate argument by failing to make an offer to prove. *See Bedree v. Bedree*, 747 N.E.2d 1192, 1196 (Ind. Ct. App. 2001) (holding that an offer of proof was not strictly necessary where the substance of the testimony the excluded witness would have given was apparent from the context of the case); *see also Arhelger v. State*, 714 N.E.2d 659, 666 (Ind. Ct. App. 1999) (noting that an offer of proof need not be "formal" and must only (1) make the substance of the excluded evidence or testimony clear to the court, (2) identify the grounds for admission of the testimony, and (3) identify the relevance of the testimony).

[15] Thus, for a witness to qualify as an expert, the subject matter of the witness's testimony must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person, and the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999).

[16] Although federal courts use the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), when determining whether expert testimony is based on reliable scientific principles, Indiana courts are not bound by *Daubert*. Still, the principles stated in *Daubert* can be helpful. *Id*. As explained in *Turner v. State:*

> Although Indiana courts are not bound by *Daubert*, we have previously noted that [t]he concerns driving *Daubert* coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied of the reliability of the scientific principles involved. Though we may consider the *Daubert* factors in determining reliability, there is no specific "test" or set of "prongs" which must be considered in order to satisfy Indiana Evidence Rule 702(b). We therefore find *Daubert* helpful, but not controlling, when analyzing testimony under Indiana Evidence Rule 702(b).

953 N.E.2d 1039, 1050 (Ind. 2011) (citations and internal quotations omitted).

[17] Accordingly, in determining whether evidence is admissible under Rule 702(b), Indiana courts may consider whether the theory or technique can be and has been tested, whether the theory has been subjected to peer review and publication, whether there is a known or potential error rate, and whether the

theory has been generally accepted within the relevant field of study. *Id*. at 1048 (citing *Daubert*, 509 U.S. at 593-94). Moreover, as clarified in *Turner:*

> Indiana's Rule 702 is not intended to interpose an unnecessarily burdensome procedure or methodology for trial courts. [*T]he adoption of Rule 702 reflected an intent to liberalize, rather than to constrict, the admission of reliable scientific evidence.* As the Supreme Court instructed in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. Evidence need not be conclusive to be admissible. The weakness of the connection of the item [of evidence] to the defendant goes toward its weight and not its admissibility. Cross-examination permits the opposing party to expose dissimilarities between the actual evidence and the scientific theory. The dissimilarities go to the weight rather than to the admissibility of the evidence.

*Turner*, 953 N.E.2d at 1050-51 (emphasis added) (some citations and internal quotations omitted).

[18]    In the present case, Dr. Belloto earned a B.S. in pharmacy from the Ohio State University ("OSU"), an M.S. in mathematics from the University of Toledo, an M.S. in pharmacy with an area of study in analytical and physical chemistry, from OSU, and a Ph.D. in pharmacy from OSU. He was licensed as a pharmacist in Pennsylvania and Ohio. He was also an assistant professor of pharmacology at the University of Toledo, where he had taught regarding the effect of alcohol on the human body. His area of study was in chemical and physical pharmacology, where he "worked on what we call a dosing and setting, helping dose drugs so that they're at their appropriate therapeutic

range." Tr. p. 164. He also he had training on several chemical breath test machines: the Alcotest, the DataMaster, and the Intoxilyzer. *Id.* When Hasting's counsel asked Dr. Belloto, "have you had the occasion to study the effects and ingestion of alcohol and issues of absorption and burn off," Dr. Belloto replied:

> Well, that's what we call pharmacokinetics, that's again, that's what I studied for my Ph.D. That's what every pharmacist studies if they want to get a pharmacy degree. So the idea is looking at absorption, elimination, how are drugs eliminated, not just looking at the routes but in clinical pharmacology we quantify those routes as we call it, some call it clinical pharmacology or pharmacokinetics, or toxicokinetics, depending if you're modeling a toxicological effect. As far as the effect, we call that pharmacodynamics so that you're modeling both the time course of the drug and the pharmacological and toxicological effects.

Tr. p. 165. When asked if he had training and background in "describing the difference between a person drinking a drink with one ounce of alcohol and the difference between absorption and burn off of that," Dr. Belloto replied, "Yes." *Id.* at 166. He had also testified in approximately twenty other cases.

[19] It appears undisputed that Dr. Belloto's credentials were impressive. He had extensive training and experience with alcohol and how it affects the human body. In terms of the rule, subject matter of Dr. Belloto's testimony was related to a scientific field—pharmacokinetics—that was beyond the ken of the average person, and Dr. Belloto had sufficient knowledge and experience in this area that would have been helpful to the trier of fact.

[20] The trial court's decision to exclude Dr. Belloto's testimony was based on the Dr. Belloto's statement that *any* pharmacist would be qualified to testify as an expert, a statement with which the trial court took umbrage. However, nothing about Dr. Belloto's generalization about the qualifications of any pharmacist diminishes Dr. Belloto extensive *personal* qualifications relating to the issues in this case.

[21] "If the witness has any peculiar knowledge or experience not common to the world that renders the witness's opinion founded upon that knowledge any aid to the trier of fact, the witness may testify as an expert." 13 Indiana Practice, Indiana Evidence § 702.107 (3d ed.). In fact, our courts have allowed testimony from "experts" who had no formal training and who were, unfortunately, far less trained than pharmacists, e.g. drug users who testified regarding the identity of drugs based on their own experience. *See Clark v. State*, 6 N.E.3d 992, 998 (Ind. Ct. App. 2014) (noting that Indiana courts have repeatedly held that a person familiar with a particular drug through use may be qualified as an expert to offer an opinion as to whether a substance in question is that drug).

[22] The State readily admits that it does not challenge that "the effects of alcohol can be studied in a scientific manner." Appellee's Br. p. 16. It challenges only "whether Dr. Belloto's training as a pharmacist provided the requisite "'knowledge, skill, expertise, training, or education' to qualify as an expert on that subject." *Id*. at 16-17. However, Dr. Belloto testified that he had studied the effects of alcohol ingestion and the issues of absorption and "burn off" in humans as part of his Ph.D. training in pharmokinetics. The fact that Dr.

Belloto did not regularly prescribe ethanol as a drug does not diminish from the fact that he has training and education beyond the knowledge of the average person, and his testimony would have been helpful to the trier of fact.

[23] We therefore conclude that the trial court abused its discretion when it determined that Dr. Belloto was not an expert and excluded his testimony.[3] However, just because the trial court abused its discretion does not necessarily mean that we must reverse Hastings's conviction.

*D. Harmless Error*

[24] Errors in the admission or exclusion of evidence are to be disregarded unless they affect the substantial rights of a party. *Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014). "In other words, we will find an error in the exclusion of evidence harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the defendant's substantial rights." *Id*. (citing *Williams v. State*, 714 N.E.2d 644, 652 (Ind. 1999)).

[25] The trial court here entered a judgment of conviction for Level 6 felony operating a motor vehicle with a BAE of 0.08 or greater. Indeed, the State

---

[3] Our holding should not be construed to mean that any pharmacist is automatically qualified to testify as an expert in any driving-while-intoxicated case. The qualifications of every expert must be determined on a case-by-case basis, depending on the "knowledge, skill, experience, training, or education" of that particular witness. Here, Dr. Belloto had extensive education and training in the field of pharmacology and pharmacokinetics and even taught this subject as a college professor. Also, he testified that he had studied the issue of the ingestion, absorption, and metabolization of alcohol in the human body. This, not simply the title of "pharmacist," is what qualified him to be an expert witness in this area.

presented evidence that Hastings's BAE was .108. Dr. Belloto's testimony would have addressed the effects of alcohol on the human body and how it is absorbed and metabolized. He also explained that he had training on several chemical breath test devices, including the Intoxilyzer, a variant of which was used in this case. Because the trial court excluded Dr. Belloto's testimony, the jury was not allowed to hear any of this testimony. Therefore, we cannot say that the improper exclusion of this testimony did not contribute to the jury's verdicts. This is not to say that the evidence was not sufficient to support the jury's finding that Hastings was intoxicated. We are simply unable to conclude that the exclusion of Dr. Belloto's testimony did not have any impact on the jury's verdict.

[26] Accordingly, we are constrained to reverse Hastings's conviction and remand for retrial. On remand, Dr. Belloto should be permitted to testify regarding the effects of alcohol on a person of Hastings' height and weight and how it is absorbed and metabolized by the body. [4]

---

[4] Dr. Belloto also explained that he had training on several chemical breath test devices, including the Intoxilyzer, a variant of which was used in this case. However, the evidence in the record is insufficient to determine whether Dr. Belloto can give an informed opinion regarding how this device operates. To the extent that Hastings argues that Dr. Belloto should have been permitted to testify regarding whether, based upon video recordings of Hastings on the night of the incident, he believed Hastings was intoxicated, we disagree. How a person behaves while intoxicated is not a subject that is beyond the knowledge of the average person. Thus, Dr. Belloto's opinion on whether Hastings' behavior indicated that he was intoxicated would not be helpful to the jury. On remand, Dr. Belloto may not testify regarding this issue.

## Conclusion

The exclusion of Dr. Belloto's testimony was improper and was not harmless. We therefore reverse Hastings' conviction and remand for retrial consistent with this opinion.[5]

Reversed and remanded.

Vaidik, C.J., and Barnes, J., concur.

---

[5] Because we reverse Hastings' conviction, we do not address his other argument that his trial counsel was ineffective.