## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2019, 6:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Russell B. Cate
Cate, Terry & Gookins LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey Dean Needler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 15, 2019 <br><br> Court of Appeals Case No. 19A-CR-15 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable J. Richard Campbell, Judge <br><br> Trial Court Cause No. 29D04-1709-F6-6656 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Jeffrey Needler was found guilty of assisting a criminal, a Level 6 felony, and sentenced to 365 days in the Indiana Department of Correction, with 305 days suspended. Needler appeals his conviction, raising one issue for our review: whether the trial court committed fundamental error by admitting evidence resulting from an allegedly unconstitutional search of Needler's residence. Concluding Needler's claim does not assert fundamental error, we affirm.

# Facts and Procedural History

[2] On September 8, 2017, Deputies Jeffrey Wright and Todd Green from the Hamilton County Sheriff's Department went to a home on Chestnut Street in Noblesville, Indiana, to serve an arrest warrant on Joshua Needler. A man identifying himself as Joshua's grandfather greeted the officers and told them that Joshua was not at that address but was staying with Needler, Joshua's uncle, at an address on Cicero Road. In 2016, law enforcement had served an arrest warrant on Joshua at that Cicero Road address and found him hiding under a bed.

[3] Deputies Wright and Green then went to the Cicero Road address. Three other officers, including Deputy Ryan Meier, joined them because a "fairly typical" way of serving an arrest warrant is to have multiple officers on scene where "a couple [of officers] will go to the door, try to make contact at the door, then one

or two will go to the back, just to make sure someone doesn't run out the back." Transcript of Evidence, Volume 2 at 70-71. Deputy Meier, with Deputy Wright backing him up, knocked on the door of the trailer and after several minutes passed during which the officers could hear movement and voices from inside, Needler answered. Officer Meier advised Needler that they were there looking for Joshua. Needler told him Joshua was not there and that he had not seen him for a couple of days.

[4] Because of the "totality of circumstances, the amount of time it took to answer the door, the rustling in there, the previous history that Joshua had been there and hid in the back," officers did not accept Needler's answer at face value but continued to talk with him for approximately ten minutes. *Id.* at 94. Officer Meier asked Needler if he would allow officers into the residence to search for Joshua. Needler said "that he could not give [officers] permission because he did not own the trailer." *Id.* at 73. Officers explained multiple times that if Needler lived there, he could give them permission to enter but he still refused. Officers asked "[t]wo, three, four" times if Joshua was in the trailer. *Id.* at 74. Officer Meier told Needler that he thought Joshua was in the trailer and also told him that if he could prove Joshua was there, he would take Needler to jail for assisting a criminal.

[5] After repeated questioning, Needler finally admitted Joshua was "probably" in the trailer. Officer Meier said, "there's no probably or probably not. You should know whether he's in there or not. And if he's in there, you need to let us in to go get him." *Id.* at 96. Eventually, Needler allowed officers into the

trailer and said, "follow me." *Id.* As Needler led officers directly to a bedroom in the back of the trailer, he announced, "[T]hey're coming in, come on out." *Id.* Officers found Joshua hiding under blankets in a closet. Joshua was taken into custody on the arrest warrant.

[6] Officers then "had further discussion" with Needler, *id.* at 75, pointing out "that he had denied [them] access and that he could have given [them] access immediately and [they] didn't need to debate over it at the beginning[,]" *id.* at 100. Needler claimed he was just protecting family. After Deputy Meier confirmed that the circumstances in 2016 when Joshua was found at the trailer were virtually identical, Deputy Meier took Needler into custody because "last time . . . they did not charge him with aiding even though they could have [and] I decided that since this was the second time I was going to arrest him for aiding a criminal." Appellant's Appendix, Volume II at 15.

[7] The State charged Needler with assisting a criminal, a Level 6 felony, for harboring, concealing, or assisting Joshua, "a person who has committed Theft as a Level 6 Felony, with the intent to hinder [his] apprehension or punishment" while "not standing in the relationship of parent, child, or spouse" to Joshua. *Id.* at 12; *see* Ind. Code § 35-44.1-2-5. A jury found Needler guilty as charged. Needler now appeals his conviction.

# Discussion and Decision

[8] Needler contends the trial court committed fundamental error "by allowing evidence of law enforcement's entrance into a trailer to be admitted at trial" in violation of his federal and state constitutional rights. Appellant's Brief at 5.

# I. Standard of Review

[9] It is unclear exactly what evidence Needler claims the trial court erroneously admitted. Nonetheless, he tacitly acknowledges that he did not object to the admission of any evidence at trial. *See* Appellant's Br. at 8-9 (stating standard of reviewing a claim of fundamental error). A contemporaneous objection is required to preserve evidentiary error on appeal, and the failure to timely object generally forfeits the issue for purposes of appellate review. *Hastings v. State*, 58 N.E.3d 919, 922 (Ind. Ct. App. 2016). To avoid this, Needler contends the admission of evidence was fundamental error.

[10] A claim that has been forfeited by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The fundamental error exception is "extremely narrow[.]" *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). Fundamental error allows us to "address an error that made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm[.]" *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014) (internal quotations and alterations omitted). "A finding of fundamental error essentially means that the trial judge erred . . . by not

acting when he or she should have, even without being spurred to action by a timely objection." *Id.* (internal quotation omitted).

## II. Unconstitutional Search as Fundamental Error

[11] Needler claims that law enforcement lacked probable cause to search the trailer, did not have a search warrant, and did not know whether or not Joshua was in the trailer and therefore had no right to enter. Needler claims the police nonetheless coerced him into consenting to their entry by surrounding the trailer and threatening to arrest him. He argues this was such "a blatant violation of basic constitutional principles" that the trial court should have *sua sponte* raised the issue at trial despite his own failure to object. Appellant's Br. at 10.

[12] In *Brown*, our supreme court explained that a showing of fundamental error arising from the admission of alleged illegally seized evidence is very limited:

> [A]n error in ruling on a motion to exclude improperly seized evidence is not per se fundamental error. Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt. That is the case here. The only basis for questioning [the defendant's] conviction lies not in doubt as to whether [the defendant] committed these crimes, but rather in a challenge to the integrity of the judicial process. We do not consider that admission of unlawfully seized evidence ipso facto requires reversal. Here, there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be. In short, the claimed error does not rise to the level of fundamental error.

929 N.E.2d at 207. In other words, a claim of error asserting that evidence was unlawfully obtained, without more, does not constitute fundamental error. *See id.*

[13] Needler does not allege that evidence was fabricated, and he does not allege that the challenged evidence is not what it appears to be – there seems to be no question that Needler told officers Joshua was not in the trailer when Joshua was in fact hiding in the trailer. It is possible, however, that Needler's claim that his consent for police to enter was coerced could be considered a claim of willful malfeasance by police, as he argues they were "devoid of information that would lead them to believe that [Joshua] was present at the residence," and "skirt[ed] the warrant requirement by threatening arrest and surrounding [his] home[.]" Appellant's Br. at 10-11.

[14] Here, officers went to the trailer because when they went to the address listed on the arrest warrant, the gentleman who answered the door identified himself as Joshua's grandfather and told them Joshua was at the trailer. With this information and the knowledge that officers had found Joshua at the trailer before when they were looking for him, they were not "devoid of information" that Joshua might be at the trailer. Moreover, Officer Wright testified it was "fairly typical" to have multiple officers on scene when serving an arrest warrant and to cover all doors so the wanted person "doesn't run out the back." Tr., Vol. II at 70-71; *see also id.* at 110 (officer testifying that it is "fairly standard" to cover the rear of a residence "[i]n case the target that we're looking for would decide to run or flee"). Officers may have asked Needler if Joshua

was in the residence up to four times before he finally admitted Joshua was there, but the interaction between police and Needler lasted only ten minutes. And finally, although Officer Meier did state that he would arrest Needler "if we can prove" Joshua is in the trailer, *id.* at 94, Officer Meier did not threaten to arrest Needler simply for refusing to allow officers to enter. "Malfeasance" is defined as:

> Evil doing; ill conduct. The commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful[.]

Black's Law Dictionary at 956 (9th ed. 2009). None of the things Needler claims amounted to police coercion could be categorized as "positively unlawful" and therefore do not amount to willful malfeasance.

[15] Needler gives lip service to the fact that he must show fundamental error, but his analysis does not show that his claims rise to the level of the "egregious circumstances" that fundamental error is available to address. *Brown*, 929 N.E.2d at 207. Instead, Needler merely asserts that evidence was improperly admitted as the product of an allegedly unconstitutional search. *See* Appellant's Br. at 12-14 (citing *J.K. v. State*, 8 N.E.3d 222 (Ind. Ct. App. 2014) and *State v. Barker*, 734 N.E.2d 671 (Ind. Ct. App. 2000) as cases similar to his own, but neither arises in the context of fundamental error). This does not call into question the integrity of the judicial process and is therefore insufficient to demonstrate fundamental error.

# Conclusion

Needler has failed to establish the trial court committed fundamental error in the admission of evidence. His conviction is therefore affirmed.

Affirmed.

Baker, J., and Najam, J., concur.